OPINION
{¶ 1} Defendant-appellant Eric Lamar McReynolds appeals his conviction and sentence entered in the Stark County Court of Common Pleas for one count of Aggravated Robbery, a felony of the first degree, in violation of R.C. 2911.01(A)(1). The plaintiff-appellee is the State of Ohio.
 {¶ 2} On December 30, 2003, appellant appeared before Judge Charles E. Brown, Jr. of the Stark County Court of Common Pleas to change his plea and plead guilty to the charged offense of aggravated robbery. At the beginning of the Crim. R. 11 plea hearing appellant acknowledged that he had reviewed the guilty plea form with his attorney, Ms. Kristina Powers of the Stark County Public Defender's Office, that his attorney had explained the form to him, and that he had signed it. Appellant further admitted that he had the opportunity to ask his attorney questions about the form so that he understood it. Appellant notified the court that he was not satisfied with his attorney:
THE COURT: And during that period of time, have you been able to satisfy yourself that Attorney Powers has been devoting to your case the amount of time which you feel is necessary and proper?
DEFENDANT McREYNOLDS: No, sir.
THE COURT: Okay. You do not feel that Attorney Powers has been devoting to your case the amount of time that you feel should be devoted to your case?
DEFENDANT McREYNOLDS: I wouldn't say time, I would say understanding.
 {¶ 3} T. 7-8. The court then inquired into the nature of appellant's dissatisfaction with his attorney. Appellant responded that he was "partially" satisfied with his attorney's legal services. His attorney offered an explanation of the nature of dissatisfaction.
MS. POWERS: Your Honor, I will advise the Court that there are portions of the case that Mr. McReynolds and I do not see eye to eye. He has vehemently disagreed with some of my assessment of the facts of this case. T. 9.
 {¶ 4} The court explained to appellant the difference between the attorney putting the time and effort into a case and disagreeing with the attorney's assessment of the case. Appellant responded that he understood the difference.
DEFENDANT McREYNOLDS: Right. I mean, I feel like she devoted enough time into my case, but, like she said, we ain't meet eye to eye on certain things, certain issues that I feel like that can help me. This is my life, but at the same time I can't down or say she ain't did certain things for me because of that. I can't say that she's not a good attorney because of that. But I can say we've got misunderstandings and I need for somebody to understand me at least halfway. I mean, but — T. 10-11.
 {¶ 5} The court continued to inquire into the nature of appellant's problems with his attorney. The court reiterated that it did not want appellant to plead guilty if it was not his choice and he was dissatisfied with his attorney's representation. The court also assured appellant that he should not have any trepidation about his attorney being a public defender since such attorneys provide excellent representation.
THE COURT: So I am professionally satisfied that they have the ability, the expertise, and the desire to represent their clients to the very best of their ability. So if you're asking me to appoint someone else, other than Attorney Powers, I'm going to tell you the same thing I tell anyone who is in your position. I just don't do that because I have trust and confidence in them.
DEFENDANT McREYNOLDS: Right. That's not what I'm asking you, Your Honor.
THE COURT: All right, sir.
DEFENDANT McREYNOLDS: I'm saying no, I didn't feel like I got what I was looking for. But, at the same time, I'm still standing here before you ready to do whatever I got to do to just get my life back. I mean, to me, what I'm doing right now I don't want to be doing. This is the worstest part of being alive. I just did it. But before I go on and go on and I'm looking around and I'm seeing what the outcome going to be in the long run, I refuse — I just don't want to be a fool.
T. 14-15.
 {¶ 6} The court then explained the mechanics of a trial, and what appellant would be facing if he decided to stand trial instead of pleading. Appellant responded that he understands the criminal justice system since he had been through it before. He wasn't necessarily satisfied with the system, but he was satisfied with his attorney.
DEFENDANT McREYNOLDS: I understand because I've been through it before. But it ain't while I'm here — it ain't why I'm here, it's what I'm here for. And, like I said, we got misunderstanding on what I'm here for. I don't think I should be here for what I'm here for but I'm not saying I don't think I should be here either. But how can I go trial when I don't feel like my playing field level, but everybody else's is? That's why I'm here today. So, yeah, I feel like she gave me the right counsel.
THE COURT: So are you satisfied with the quality, of legal services which you have received from Attorney Powers?
DEFENDANT McREYNOLDS: Yes, sir.
T. 18-19.
 {¶ 7} The court then proceeded with the Crim. R. 11 colloquy, determining that appellant's guilty plea was knowing, intelligent, and voluntary. This included an understanding that appellant's guilty plea would result in a prison term of six years. After the colloquy, appellant pleaded guilty to the charged offense.
 {¶ 8} Before sentencing appellant was given the opportunity to speak:
THE COURT: Yes, sir, what would you like to say to me?
DEFENDANT McREYNOLDS: I just heard what you told me about the law and about what's going on with this paper, and really that's all I ask for, that-s all that I asked for, but it don't seem like that's what I'm getting. I — no disrespect to the courtroom or you or Ms. Powers, or nobody, but you say reasonable doubt, upon reasonable doubt?
THE COURT: Beyond a reasonable doubt.
DEFENDANT McREYNOLDS: Right, beyond a reasonable doubt. I feel like it's doubt and — but, like I said earlier, it seems to me it don't matter what I feel because the end result going to be the same. And, once again, that's why I said what I said about counsel. That's why I feel like I feel. And, on another note, that's why I'm still standing right here ready to do what I got to do to get on with my life.
T. 28-29.
 {¶ 9} Appellant then wanted to say something after the conclusion of the plea and sentencing.
THE COURT: Is there anything else you want to say to me, sir?
DEFENDANT McREYNOLDS: Yeah.
THE COURT: Yes, sir.
DEFENDANT McREYNOLDS: Whether or not — whether or not — I just want to say, it's going to sound crazy, but I want to say thank you or I appreciate how — you taking the time to explain to me how everything supposed to be.
THE COURT: Anything else you wish to say to me, sir?
DEFENDANT McREYNOLDS: No, sir. T. 30.
 {¶ 10} In accordance with the pleas agreement the court sentenced appellant to a term of incarceration of six years.
 {¶ 11} Appellant timely filed a notice of appeal, and raises the following two assignments of error for our consideration:
 {¶ 12} "I. The trial court erred as a matter of law thereby violating the appellant eric Lamar McReynolds' right to due process as guaranteed by the united states and Ohio constitutions by accepting his plea of guilty when it was not knowingly, intelligently, and voluntarily made.
 {¶ 13} "II. The appellant eric Lamar McReynolds was denied effective assistance of counsel as guaranteed by the sixth amendment of the united states constitution and article 1 section 10 of the Ohio State constitution."
 I. II. {¶ 14} In his first assignment of error, appellant maintains that his plea of guilty was not knowingly, intelligently and voluntarily made. In his second assignment of error, appellant argues that he was denied effective assistance of counsel "for all the reasons stated in Assignment of Error 1." We disagree.
 {¶ 15} A plea of guilty constitutes a complete admission of guilt. Crim.R. 11(B) (1). "By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime." United Statev. Broce (1989), 488 U.S. 563, 570, 109 S.Ct. 757, 762, 102 L.Ed.2d 927,936. The plea renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt.Menna v. New York (1975), 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195.
 {¶ 16} When a defendant enters a plea of guilty as a part of a plea bargain he waives all appealable errors which may have occurred at trial, unless such errors are shown to have precluded the defendant from entering a knowing and voluntary plea. State v. Kelley (1991),57 Ohio St.3d 127, 566 N.E.2d 658.
 {¶ 17} In Hill v. Lockhart (1985), 474 U.S., 106 S.Ct. 366, the Court noted: "[t]he longstanding test for determining the validity of a guilty plea is `whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' NorthCarolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162
(1970); see Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711,23 L.Ed.2d 274 (1969); Machibroda v. United States, 368 U.S. 487, 493,82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962) . . . Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice `was within the range of competence demanded of attorneys in criminal cases.' McMann v. Richardson, 397 U.S. 759, 771,90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). As we explained in Tollett v.Henderson, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), a defendant who pleads guilty upon the advice of counsel `may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann' Id., at 267, 93 S.Ct., at 1608." Id. at 56-57,106 S.Ct. at 369.
 {¶ 18} The Court in Hill, supra, held that the two-part Strickland v.Washington (1984), 466 U.S.68, 104 S.Ct. 2052 test applies to challenges to guilty pleas based on ineffective assistance of counsel. 474 U.S. at 58,106 S.Ct. 366. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 506 U.S. 364,113 S.Ct. 838, 122 L.Ed.2d 180; Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136. In other words "in order to satisfy the `prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart,
supra, 474 U.S. at 59, 106 S.Ct. at 370. However, a different outcome at the plea stage but for counsel's errors is constitutionally insignificant if the ultimate result that was reached was neither unfair nor unreliable. Lockhart v. Fretwell (1993), 506 U.S. 364, 369, 113 S.Ct.838, 842.
 {¶ 19} At this point we would note that appellant made no attempt to withdraw his guilty plea at the trial court level. Nor did appellant request the trial court discharge his court appointed attorney and substitute new counsel. Accordingly, we have little in the way of evidence as to appellant's contentions that he received ineffective assistance of counsel or that his plea was not knowing, intelligent or voluntarily given.
 {¶ 20} The right to competent counsel does not require that a criminal defendant develop and share a "meaningful relationship" with his attorney. Morris v. Slappy (1983), 461 U.S. 1, 13, 103 S.Ct. 1610, 1617,75 L.Ed.2d 610; State v. Blankenship (1995), 102 Ohio App.3d 534,657 N.E.2d 559; State v. Burroughs, 5th Dist. No. 04CAC03018, 2004-Ohio-4769 at ¶ 11.
 {¶ 21} In the context of reviewing a claim by the defendant that the trial court abused its discretion by overruling the defendant's request to discharge court appointed counsel and to substitute new counsel for the defendant the courts have taken the approach that the defendant must show a complete breakdown in communication in order to warrant a reversal of the trial court's decision. In State v. Cowans (1999), 87 Ohio St.3d 68,1999-Ohio-250, 717 N.E.2d 298 the Court noted: "[e]ven if counsel had explored plea options based on a belief that Cowans might be guilty, counsel's belief in their client's guilt is not good cause for substitution. "`A lawyer has a duty to give the accused an honest appraisal of his case. * * * Counsel has a duty to be candid; he has no duty to be optimistic when the facts do not warrant optimism.'" Brown v.United States (C.A.D.C. 1959), 264 F.2d 363, 369 (en banc), quoted inMcKee v. Harris (C.A.2, 1981), 649 F.2d 927, 932. "`If the rule were otherwise, appointed counsel could be replaced for doing little more than giving their clients honest advice.'" McKee, 649 F.2d at 932, quotingMcKee v. Harris (S.D.N.Y. 1980), 485 F.Supp. 866, 869." Id. at 73,717 N.E.2d at 304-305.
 {¶ 22} In a similar vein it has been held that hostility, tension, or personal conflicts between an attorney and a client that do not interfere with the preparation or presentation of a competent defense are insufficient to justify a change in appointed counsel. See State v.Henness (1997), 79 Ohio St.3d 53, 65-66, 679 N.E.2d 686. Furthermore, "[m]erely because appointed counsel's trial tactics or approach may vary from that which appellant views as prudent is not sufficient to warrant the substitution of counsel." State v. Glasure (1999),132 Ohio App.3d 227, 239, 724 N.E.2d 1165; State v. Evans (2003),153 Ohio App.3d 226, 235-36, 2003-Ohio-3475 at ¶ 31, 792 N.E.2d 757,764; State v. Newland, 4th Dist. No. 02CA2666, 2003-Ohio-3230 at ¶ 11.
 {¶ 23} In the case at bar, the appellant disagreed with trial counsel concerning counsel's assessment of the facts of his case; he "didn't feel like [he] got what [he] was looking for"; he felt there was "reasonable doubt" in his case; and he wanted to be sentenced to less than six years. (T. at 9; 15; 28-29; 32). Appellant admitted that he had met with his attorney, discussed the case and the plea bargain and that counsel devoted enough time to his case. (Id. at 7; 10). Accordingly, appellant's complaints do not constitute a breakdown in the attorney-client relationship such that the ultimate result that was reached was either unfair or unreliable. The record is void of any facts to show why appellant lacked confidence in his attorney, such as a breakdown in communication or a conflict of interest. Indeed, appellant indicated that he understood all of the proceedings, the rights he was waiving, and the implications of his plea.
 {¶ 24} Because appellant in this case failed to allege the kind of "prejudice" necessary to satisfy the second half of the Strickland v.Washington test, the appellant has not shown that the ultimate result that was reached was either unfair or unreliable.
 {¶ 25} Accordingly, appellant's first and second assignments of error are overruled.
 {¶ 26} For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
Gwin, P.J., Wise, J., and Boggins, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed. Costs to appellant.