[Cite as *State v. Adams*, 2014-Ohio-724.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO.    13 MA 54 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| LAMAR ADAMS, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS: Criminal Appeal from Common Pleas
Court, Case No. 11CR952.

JUDGMENT: Reversed and Remanded.

APPEARANCES:
For Plaintiff-Appellee: Attorney Paul Gains
Prosecuting Attorney
Attorney Ralph Rivera
Assistant Prosecuting Attorney
21 West Boardman Street, 6th Floor
Youngstown, Ohio  44503

For Defendant-Appellant: Attorney Joshua Hiznay
1040 South Commons Place, Suite 202
Youngstown, Ohio  44514

JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated:  February 14, 2014

VUKOVICH, J.

{¶1} Defendant-appellant Lamar Adams appeals after being sentenced by the Mahoning County Common Pleas Court to six years in prison for felonious assault. He asks that we vacate his plea because the assistant prosecutor breached the plea agreement by asking for a maximum sentence of eight years after the state had specifically agreed in writing and on the record at the plea hearing to stand silent and make no recommendation at sentencing. The state points out that the defense entered no objection to the state's recommendation at sentencing and urges that the breach did not constitute plain error.

{¶2} We hereby recognize plain error in the breach of the plea agreement by the state. However, we conclude that plea withdrawal is not required here. This case is reversed and remanded for a new sentencing hearing before a different trial judge where the state shall abide by its agreement.

## STATEMENT OF THE CASE

{¶3} In August of 2011, appellant hit his girlfriend in the face with a bottle during an argument while she was asking him to move out. Appellant was charged with felonious assault for knowingly causing serious physical harm to another in violation of R.C. 2903.11(A), a second degree felony. A mental examiner was appointed as appellant's attorney considered whether a defense could be presented based upon appellant's diagnosed post-traumatic stress disorder, for which he received SSI-disability. This condition resulted from appellant witnessing the suicide of a person who lived with him.

{¶4} On October 22, 2012, appellant agreed to enter an *Alford* plea to the charge. The written plea shows that the state agreed to make "no recommendation" and to "stand silent." At the plea hearing, the assistant prosecutor explained that the victim would be speaking at sentencing but: "The state would not be saying anything -- [we] will remain silent at the time of sentencing." (Plea Tr. 2). The state also asked that appellant be permitted to remain out on bond pending sentencing.

{¶5} Sentencing was originally set for December 18, 2012. The defense asked for a continuance as appellant's counselor was unavailable to testify on that

date, and sentencing was reset for February 4, 2013. For some undocketed reason, sentencing was thereafter apparently reset for March 21, 2013. Sentencing proceeded on that date, four months after the plea hearing, where the state was represented by a different assistant prosecutor.

{¶6} The assistant prosecutor began by asking the court to follow the recommendation in the PSI. (The PSI states merely that appellant should be sentenced to prison for a period deemed appropriate by the court.) He pointed out that the case was worked by a different prosecutor and admitted that he was not familiar with the case. He stated that he did review the victim's statement and the police report. (Sent. Tr. 2). He then expressed that the victim's life has been changed in a terrible way by appellant hitting her with the bottle and causing terrible injuries to her face from which she still suffers. (Sent. Tr. 3). The assistant prosecutor acknowledged that the defendant's issues outlined in the PSI may have contributed to the offense but urged that punishment is not the only goal of sentencing as the victim and public need protected. He then concluded by asking the court to impose the maximum sentence of eight years in prison. (Sent. Tr. 3).

{¶7} The court then heard from the victim. Her injuries required more than 100 stitches, and future surgery was recommended. She had to leave college due to the injuries. (Sent. Tr. 4). She disclosed that she and her children are still afraid. (Sent. Tr. 5). She required counseling due to the emotional difficulties the attack caused. She still has severe headaches and daily pain in her face requiring her to take medication.

{¶8} The victim explained that she received a five-year protection order against appellant but feared that he may violate it upon release. The victim professed that when appellant was released on bond, she began received harassing Facebook comments from his family, which she suggested may have actually been from him. (Sent. Tr. 6). She opined that appellant has not expressed remorse or taken responsibility for his actions. (Sent. Tr. 6-7). She concluded: "I am hoping Mr. Adams gets some jail time and long probation time when he gets out." (Sent. Tr. 7).

**{¶9}** Defense counsel then emphasized that appellant's criminal history is fairly minimal. The only prior felony charge was successfully disposed of through drug court in 2001. Counsel mentioned that appellant has led a law-abiding life since then (with the exception of a receiving stolen property offense in 2007 where he was given a ninety-day suspended sentence). (Sent. Tr. 8). It was explained that appellant witnessed his friend's suicide in 2009 and has since suffered depression and PTSD; he also experienced alcohol issues from self-medicating for the mental health issues. (Sent. Tr. 8-9). Counsel explained that appellant and the victim had a good relationship that was ending on the day of the incident and that appellant's PTSD contributed to his excessive reaction. (Sent. Tr. 9-10).

**{¶10}** Defense counsel noted that appellant's family helped him bond out in February 2012, after he spent six months in jail on this offense. In the year since, appellant committed no new offenses, appeared for court, attended AA classes, visited his counselor, and completed some community college courses. Counsel opined that if appellant is permitted to return home to his family, he would stay out of trouble. (Sent. Tr. 11).

**{¶11}** Appellant then professed that the six months in jail changed his life as it forced him to stop drinking and living in denial. He said that he had a good relationship with the victim prior to the incident and that he "snapped," alluding to alcohol and PTSD issues. (Sent. Tr. 12). Appellant explained that he goes to his meetings, completed anger management, and goes to school. (Sent. Tr. 13).

**{¶12}** The trial court then sentenced appellant to six years in prison. Appellant filed a timely notice of appeal. Appellant's sole assignment of error provides: "The State of Ohio breached the parties' plea agreement by failing to stand silent at sentencing and therefore Appellant Adams' plea must be withdrawn."

## ARGUMENTS

**{¶13}** Appellant urges that upon breach of the promise in the contractual plea agreement, the defendant is entitled to rescission or specific performance. Appellant, who is represented by the same attorney that represented him below, recognizes that he failed to object to the assistant prosecutor's statement at sentencing and has thus

waived all but plain error, citing *State v. Hansen*, 7th Dist. No. 11MA63, 2012-Ohio-4574, ¶ 15.

{¶14} He urges that the state's agreeing to stand silent and make no recommendation but then asking for a maximum sentence of eight years and making statements to justify a maximum sentence is an obvious error which is outcome determinative as the state's recommendation is a strong influence on the court and is a major plea motivator for this reason. He notes that the trial court stated that it considered the oral statements in making its decision, which would include the assistant prosecutor's recommendation and statements made in breach of the plea agreement.

{¶15} Initially, the state posits that the determination of whether a plea agreement was breached is within the trial court's discretion, citing *State v. Payton*, 6th Dist. No. E-09-070, E-09-071, 2010-Ohio-5178, ¶ 11 and the cases cited therein. However, these cases dealt with a claim that the agreement was not breached due to some action or inaction by the defendant. Here, the agreement was clearly breached. Next, the state contends that the defendant failed to object at sentencing and thus waived all but plain error. As aforementioned, appellant admitted that plain error was the proper standard of review.

{¶16} Lastly, the state contends that the plain error test is not satisfied here because appellant cannot show that the outcome clearly would have been different if not for the error. The state notes that the trial court is not bound by its recommendation and urges that there is no indication that the court was influenced by the state's recommendation of the maximum. The state also points out that our plain error analysis is a discretionary doctrine which may, but need not, be employed if warranted.

## LAW

{¶17} A plea agreement is an essential part of the criminal justice system. *State v. Vari*, 7th Dist. No. 07MA142, 2010-Ohio-1300, ¶ 19, citing *Santobello v. New York*, 404 U.S. 257, 261, 92 S.Ct. 495, 30 L.Ed. 427 (1971). A defendant has a

contractual right to enforcement of the prosecutor's obligations under the plea agreement after the plea has been accepted by the court. *See id.* at ¶ 25.

{¶18} In *Santobello*, the defendant was charged with two felonies, he pled guilty to a lesser included offense with a maximum sentence of one year, and the state agreed to make no recommendation as to the sentence. *Santobello*, 404 U.S. at 258. Sentencing did not take place until more than a year later, where the trial judge, the assistant prosecutor, and the defense counsel were all different than those present at the plea. *Id.* at 258-259.

{¶19} The new prosecutor asked for a maximum sentence of one year in prison and made statements in support. *Id.* at 259. Defense counsel objected urging that the state had agreed to make no recommendation. *Id.* The new prosecutor urged that there was no such promise (but the state did not thereafter maintain this argument). *Id.* The trial judge stated that he was not at all influenced by what the prosecutor recommended and concluded that there was no need to adjourn the sentencing. *Id.* The judge related that the defendant had a long and serious criminal history and noted that the PSI stated that he was a professional criminal. *Id.* at 259-260. The judge then sentenced the defendant to the maximum sentence of one year in prison. *Id.* at 260.

{¶20} The United States Supreme Court found that reversal was required, stating: "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262. The Court pointed out that the defendant bargained for a promise from the state that it would make no recommendation as to the sentence. *Id.* "The staff lawyers in a prosecutor's office have the burden of 'letting the left hand know what the right hand is doing' or has done. That the breach of agreement was inadvertent does not lessen its impact." *Id.*

{¶21} The United States Supreme Court acknowledged that the trial judge stated that the prosecutor's recommendation did not influence him, and the Court expressed that it had no reason to doubt that. *Id.* at 261. Still, the Court concluded: "the interests of justice and appropriate recognition of the duties of the prosecution in

relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the state courts for further consideration." *Id.* at 261-262. The state court was ordered to "decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, i.e., the opportunity to withdraw his plea of guilty." *Id.* at 262.

**{¶22}** One justice concurred to add that there should be considerable weight given to the defendant's choice of vacation or resentencing when the state court makes its decision but recognized that each case is different. *Id.* at 267 (Douglas, J., concurring in judgment and opinion and writing separately). Three other justices concurred in the reversal, but dissented to the decision to leave the optional remedies on remand, positing that vacation of the plea as requested was required because the defendant requested it prior to the trial court's entry of the sentence. *Id.* at 267-269 (Marshall, J., concurring in part and dissenting in part).

**{¶23}** In *Hansen*, this court stated that where a defendant fails to object at sentencing to the state's recommendation, the appellate court proceeds under a plain error review. *Hansen*, 7th Dist. No. 11MA63 at ¶ 15, citing *Puckett v. United States*, 526 U.S. 129, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009). *See also State v. Montgomery*, 4th Dist. No. 07CA858, 2008-Ohio-4753, ¶ 17 (finding no plain error where state forgot to recommend concurrent sentences but court gave defendant community control and defendant later violated probation so state was no longer obligated); *State v. Sideris*, 4th Dist. No. 04CA37, 2005-Ohio-37, ¶38 (finding no plain error because there was no evidence in the record that the prosecutor agreed to recommend a certain sentence); *United States v. Barnes*, 278 F.3d 644 (6th Cir.2002) (finding plain error where government agreed to recommend the low end of the guidelines, but at sentencing the government did not mention the recommendation)

**{¶24}** Pursuant to Crim.R. 52(B), "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

Plain error is a discretionary doctrine to be used with the utmost of care by the appellate court only in exceptional circumstances in order to avoid a manifest miscarriage of justice. *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 62. A plain error is an obvious error, and in order to have affected substantial rights, the error must have affected the outcome of the proceeding. *Id. See also State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 59 (only if outcome clearly would have been different).

**{¶25}** In *Hansen*, we thus framed the question as whether the defendant's sentence would have been different absent the breach. *Hansen*, 7th Dist. No. 11MA63 at ¶ 15. We then concluded that there was no error, let alone plain error, because the state did not breach its agreement to recommend a five-year sentence. *Id.* at ¶ 15, 33 (at sentencing, the state recommended five years and then recapped by asking for "a sentence no less than the five years recommended by the State"). We alternatively stated that even if there were some error, the defendant failed to show how his eight-year sentence would have been different absent the state's comment. *Id.* at ¶ 18 (noting that the court had discretion to sentence up to 18 years for one first-degree and one second-degree felony and that the court was not bound by the state's recommendation).

**{¶26}** In *McGinnis*, the Third District found no plain error where the trial court sentenced the defendant to consecutive terms after the prosecution failed to recommend concurrent sentences at the sentencing hearing, which it had agreed to recommend in the plea agreement and at the plea hearing. *State v. McGinnis*, 3d Dist. No. 15-08-07, 2008-Ohio-5825. Notably, it was not a case where the state, for instance, agreed to recommend concurrent sentences but then a prosecutor stands up at sentencing and recommends consecutive sentences with negative statements in support.

**{¶27}** In *Puckett*, the government backed off its reduction agreement at sentencing and the defendant pointed to the prior agreement but did not object to the state failing to stand by it. Importantly, the trial judge stated at sentencing that a reduction for acceptance of responsibility is "so rare [as] to be unknown" where a

defendant continues to engage in crime pending sentencing, and the PSI recommended no reduction. (Thus, new acts occurred since the plea.) The Circuit Court applied the plain error doctrine and found the breach was not outcome-determinative due to the trial judge's statements.

**{¶28}** The United States Supreme Court heard the case to settle the question of whether the plain error test applies in such cases. *Puckett*, 526 U.S. at 133. The Court decided that plain error review was appropriate. Notably, that Court adds to its plain error test that the error must seriously affect the fairness, integrity or public reputation of judicial proceedings (a prong additional to that of Ohio's plain error test). *Id.* at 135. The Court suggested that the error was not outcome determinative and opined that a sentencing reduction under the facts of that case would have been "ludicrous" so that the final prong of their plain error standard would not have been met either. *Id.* at 142-143.

<u>ANALYSIS</u>

**{¶29}** The prosecution's statements here were not borderline or ambiguous. Nor was this a mere failure to speak. In contrast to our *Hansen* case, there is absolutely no question here that the state breached its agreement. The agreement was not just contained in an oral statement at the plea hearing but was also included in the written agreement within the record. The substitute assistant prosecutor read the victim impact statement and the police reports; he should have first read the written plea to ascertain his duties based upon what the state promised.

**{¶30}** And, the breach here was not minor or technical. The state went from agreeing to stand silent and make no sentencing recommendation to insisting that a maximum sentence of eight years was required in order to protect the victim and the public and provided facts in support of its new recommendation.

**{¶31}** We must contrast appellant's argument (that the prosecution's request for the maximum was outcome-determinative) to the *Hansen* defendant's situation where the state set forth its recommended sentence of five years and then happened to thereafter use the language, "no less than five years." In an argument base on sentences, Hansen contested the propriety of the language used in the prosecutor's

concluding statement. In any event, the prosecutor in *Hansen* had informed the trial court at sentencing that it agreed to recommend five years and reported that it stood by that recommendation. Here, there was no indication to the trial court at sentencing that the actual agreed-upon recommendation was not a maximum sentence but rather that the state had previously bound itself to take no position and to stand silent at appellant's sentencing.

{¶32} In addition, there are no statements by the trial court which could dispel concerns as there were in the United States Supreme Court's *Puckett* case. *See Puckett*, 56 U.S. 129. There, the state did not follow through in recommending a reduction in sentence, but the trial judge specifically stated that a reduction after a defendant continues to engage in crime is "so rare [as] to be unknown." The trial court was presented with the state's refusal to follow through with its promised recommendation and that the refusal was based on new behavior by the defendant that had occurred after the state agreed to recommend the reduction. Plus, the PSI in that case urged that a reduction was not warranted.

{¶33} Consequently, the state's failure to recommend a reduction was easier to categorize as not outcome-determinative in that case. Notably, the Court opined a reduction would have been "ludicrous" in that case, whereas here, had the state fulfilled its promise to stand silent, a sentence of less than six years would not be considered ludicrous based on this record. Moreover, the *omission* of an agreed upon recommendation is less outcome-determinative in its nature than *outright advocacy for a maximum sentence* when the state was bound to stand silent.

{¶34} Likewise, *the difference between standing silent and pressing for a maximum sentence of eight years is great*. As appellant points out, it is difficult to affirmatively show that the sentence would have been different had the prosecutor fulfilled the state's promise to stand silent. Yet, it is also impossible to say, under the facts and circumstances of this case, that the state's pressing for a maximum eight-year sentence did not contribute to the trial court decision to impose six years.

{¶35} We cannot agree that the trial court's decision to diverge downward from the state's recommendation shows that the state's recommendation had no

effect on the length of the sentence. Unlike many other cases, the trial court did not have a career criminal before it, and the victim did not beseech the court to impose a long prison sentence. Rather, the victim asked for "some jail time" and then for a long term of probation. Appellant did not have a recent criminal history, nor was his criminal record lengthy (with the exception of loud music offenses). The original prosecutor even pointed out at the plea hearing that appellant's history contains no offense of a similar nature. (Plea Tr. 10).

{¶36} The state's recommendation is a well-recognized tool in the plea bargaining process, which is an essential component of the criminal justice system. The state's promise to refrain from insisting upon a lengthy sentence is a favorable factor in a decision to enter a plea. And, the state's recommendation of a maximum sentence does carry great weight. This seems especially true in a case involving a plea to the original charge, where the trial court would be left to ponder why the defendant agreed to plead as charged when the state is still asking for a maximum sentence. Due to the circumstances of this case, this is matter where we should recognize plain error in the state's breach of the plea agreement.

{¶37} Appellant asks that we vacate his plea. However, we also have the option of imposing specific performance in the form of a remand for resentencing in front of a different judge where the state will stand by its agreement. *See Santobello*, 404 U.S. 257. Notably, *Santobello* involved a request to vacate the plea made to the trial judge, prior to the imposition of sentence, making the plea vacation remedy more palatable in that case. (And that Court still did not require vacation but left the remedy choice to the state courts).

{¶38} In *Barnes*, the United States Court of Appeals for the Sixth Circuit found plain error where the government did not follow through with its agreement to recommend sentencing at the low end of the guidelines. That court chose to remand for resentencing in front of a different district court judge. *Barnes* 278 F.3d 644, 649 citing *United States v. Mondragon*, 228 F.3d 978, 981 (9th Cir.2000). As the *Barnes* Court noted, the choice of this remedy in no way questions the fairness of the original sentencing judge. Rather, it merely represents the most appropriate choice from the

two options presented by the United States Supreme Court:  plea vacation or new sentencing hearing before a different judge.

{¶39} For the foregoing reasons, the judgment of the trial court is reversed and the case is remanded for a new sentencing hearing before a different trial judge where the state shall abide by its agreement.


Waite, J., concurs.
DeGenaro, P.J., concurs.