*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

DARRELL LAMAR JONES,

       Defendant-Appellant.

UNPUBLISHED
September 17, 2019

No. 343621
Kent Circuit Court
LC No. 17-004787-FC

Before: SWARTZLE, P.J., and GLEICHER and M. J. KELLY, JJ.

PER CURIAM.

Darrell Lamar Jones pleaded no contest to second-degree murder, MCL 750.317, in exchange for the prosecutor's promise to "take no position" with regard to Jones's minimum sentence. Nevertheless, the prosecutor argued for the longest possible guidelines minimum term. Defense counsel did not object to this obvious breach of the plea agreement. The trial court imposed a minimum sentence at the top of the guidelines range.

The prosecution admits its plain error, but contends that Jones cannot demonstrate prejudice. Alternatively, the prosecution insists that only a limited remand is required to allow the sentencing court "to state on the record whether it was influenced by the People's sentencing recommendation." We reject both arguments.

In every sentencing decision, the court must make an independent judgment. But prosecutors routinely weigh in for a reason: to sway the outcome. No evidence of record suggests that the prosecutor's effort in this case went unrewarded. To the contrary, Jones's sentence matched the prosecutor's request. "[T]he interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty" compel us to remand for resentencing before a different judge. *Santobello v New York*, 404 US 257, 262; 92 S Ct 495; 30 L Ed 2d 427 (1971). Accordingly, we vacate Jones's sentence and remand for resentencing before a different trial court judge.

Jones stabbed and killed the victim. The prosecutor charged him with open murder. As part of a negotiated plea bargain, the prosecution offered to allow Jones to plead no contest to second-degree murder. In exchange, the prosecutor agreed to make no recommendation regarding Jones's sentence. On the record, the prosecutor promised:

> The worse he'd be looking at would be what the Guidelines are, which we believe are 15 to 25 on the minimum. We'd take no position with regard to . . . what minimum the Court would give him within that range and we would also recommend a sentence within those Guidelines . . . minimum . . . .

The prosecutor then read the plea agreement aloud:

> Upon successful plea and sentence to murder in the second degree, the People will dismiss the open murder charge and recommend that he be sentenced on the minimum to no higher than the Guidelines of 15 to 25 years on the minimum. We'll drop all habitual offender supplemental Information. Also, I'd like to say, it was included in the letter but not stated on the record, that we also agreed to forego any additional charges arising out of the prior 404(b) stabbing. There'll be no charges arising out of that.

The trial court clarified, "And my understanding is you'll be staying out of sentencing then?" The prosecutor reconfirmed that she would leave the sentence entirely up to the court.

Jones accepted this offer and pleaded no contest to second-degree murder. At sentencing, the same prosecutor recounted the background of the plea negotiations, including the details of previous offers that had been rejected. The prosecutor then argued for a sentence at the top of Jones's sentencing guidelines range:

> But this defendant has done this in the past and gone unpunished. Based on the nature of this crime, he should be sentenced at the top end of his Guidelines because that would be justice and that would keep the community safe, and it would tell him that you cannot kill people - - and he's killed two people that we know of by stabbing them.
>
> You . . . need to be punished for it. And 25 years doesn't seem like a long time to me, when this other man has no life.

Defense counsel did not object to the prosecutor's inappropriate sentencing recommendation, but refuted her claim that Jones had killed two people. The trial court admitted it had no "proofs" of "any other stabbing or murder." The court then imposed sentence at the top of the guidelines, with the following preamble and postscript:

> This was . . . clearly a senseless killing. There is no excuse and there is no justification whatsoever for this. You were in a motel room that was adjacent to this other person's motel room. You were involved with a prostitute. You got upset with him with regards to some issue, and you stabbed and killed him, and

you have no remorse whatsoever. It is very clear that you have justified the facts and circumstances in your own mind, and that causes me great concern that you can't even today acknowledge what you did, sir.

Your Sentencing Guidelines call for a minimum sentence between 108 and 300 months. And there is a sentencing agreement that you be sentenced in a range for your minimum sentence of 15 to 25 years. I'll state for the record that the sentence that I'm going to impose is proportionate and reasonable under *People v Milbourn* and *People v [Lockridge]*. And even if the Sentencing Guidelines were changed by the appellate courts, I would impose the same sentence.

As I indicated earlier to your attorney, I'm not taking into consideration the remarks by [the prosecuting attorney] that you were involved in another murder. But . . . sir, this is outrageous. There's no excuse and you have not even owned up to what you have done.

Jones filed a delayed application for leave to appeal his sentence. A split panel of this Court denied the application for lack of merit in the grounds presented. *People v Jones*, unpublished order of the Court of Appeals, entered June 19, 2018 (Docket No. 343621). Jones applied for leave to our Supreme Court, which remanded the matter for our consideration as on leave granted and directed us to consider:

> (1) whether the prosecutor breached an agreement with the defendant to take no position regarding a specific sentence within a sentencing range when the prosecutor recommended a sentence "at the top end of his Guidelines," and, if so, (2) whether the error violates due process and requires resentencing. [*People v Jones*, 503 Mich 884 (2018).]

II

Jones now seeks resentencing before a different judge.[1] The prosecution counters by arguing that defense counsel's failure to object mandates plain-error review, and that Jones cannot establish the third prong of that standard—a plain error affecting substantial rights.

Plain-error review controls our analysis, as Jones's counsel did not object to the prosecutor's recommendation. See *Puckett v United States*, 556 US 129, 134-137; 129 S Ct 1423; 173 L Ed 2d 266 (2009). Under that framework, Jones must demonstrate that (1) an error occurred, (2) the error was plain or obvious, and (3) the error affected a substantial right. *People*

---

[1] In a reply brief, Jones's appellate counsel concedes that "[i]t may not be wise to vacate the plea—the original charge of open murder *would return*." (Emphasis in original.) Although counsel asserts that the choice of whether to vacate the plea or submit to resentencing is Jones's to make, counsel acknowledges that the Supreme Court's remand order contemplates only resentencing. Accordingly, we confine ourselves to that remedy.

*v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Even if all three requirements of plain error are met, we must then consider an appropriate remedy. *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (cleaned up).[2]

The terms of the plea agreement persuaded Jones to forego a panoply of constitutional protections, including the right to a trial by jury. His due process right to the integrity of the plea negotiation process remained. Therefore, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello*, 404 US at 262. Once the prosecution and defendant reach a plea agreement, "the prosecution is bound by the terms of the plea agreement." *People v Arriaga*, 199 Mich App 166, 168; 501 NW2d 200 (1993) (cleaned up). Due process compelled the prosecutor to honor its side of the bargain. The prosecutor's breach of its promise to refrain from advocating a top-of-guidelines sentence undercut the benefits of the plea, thereby denying Jones due process of law.

The prosecution does not dispute these principles. It admits that an error occurred, and that the error was plain. Rather, the prosecutor zeros in on prejudice. Jones cannot prove that the error affected his *actual* sentence, the prosecution asserts. There is a modicum of merit to this argument, as the United States Supreme Court pointed out in *Puckett*, 556 US at 141-142:

> The defendant whose plea agreement has been broken by the Government will not always be able to show prejudice, either because he obtained the benefits contemplated by the deal anyway (e.g., the sentence that the prosecutor promised to request) or because he likely would not have obtained those benefits in any event (*as is seemingly the case here*). [Emphasis added.]

The defendant in *Puckett* did not receive the reduction he negotiated for (a three-level reduction of his offense level for acceptance of responsibility) because after proffering his plea, he "continued to engage in criminal conduct." *Id*. at 133. No due process violation occurred despite that an assistant United States attorney broke a promise to recommend the reduction; the integrity of the plea process remained untarnished. Puckett "did not cease his life of crime," the Supreme Court highlighted, rendering the promised sentence reduction "so ludicrous as itself to compromise the public reputation of judicial proceedings. *Id*. at 143.

---

[2] This opinion uses the new parenthetical (cleaned up) to improve readability without altering the substance of the quotation. The parenthetical indicates that nonsubstantive clutter such as brackets, alterations, internal quotation marks, and unimportant citations have been omitted from the quotation. See Metzler, Cleaning Up Quotations, 18 J App Pract & Process 143 (2017).

This case does not resemble *Puckett*. No new facts came to light after Jones entered his no-contest plea. Rather, Jones lost a central benefit of his bargain when the prosecution strenuously advocated for a sentence at the top of the guidelines, capping its request by importuning, "25 years doesn't seem like a long time to me, when this other man has no life." That the trial court "adopted precisely the sentence the government recommended" supports that the prosecutor succeeded in influencing the decision, establishing prejudice. *United States v Edgell*, 914 F3d 281, 290 (CA 4, 2019). And there is more. The prosecutor advanced several compelling *reasons* for imposing a 25-year minimum sentence, urging "that would be justice," it "would keep the community safe," and it would send a message to Jones that "you cannot kill people . . . you need to be punished for it." The trial court disavowed having considered that Jones was "involved in another murder," but made no mention of having disregarded the prosecutor's other justifications for a top-of-the-guidelines sentence.

We find analogous *United States v Kirkland*, 851 F3d 499 (CA 5, 2017). There, as here, the legal analysis centered on whether the defendant sustained prejudice as a result of a broken plea agreement. The United States Court of Appeals for the Fifth Circuit held that the breach affected the defendant's substantial rights because "the Government did not merely remain silent, in breach of its promise to urge a low-end sentence; rather, the Government aggressively argued for the high end of the guidelines range." *Id*. at 504. A common-sense observation followed. A reviewing court "must consider not only the possibility that the district court *would have been* influenced by the Government's recommendation for a low-end sentence," the Fifth Circuit explained, "but also the possibility that the district court *was* influenced by the Government's recommendation of, and argument for, a high-end sentence." *Id*. (emphasis in original).

In *Kirkland*, the trial court imposed a midrange sentence rather than the top of the guidelines sentence recommended by the prosecutor. *Id*. Notwithstanding the prosecutor's "strongly argued" plea for a "high-end sentence," the Fifth Circuit recognized that the district court "may have been influenced not only by the Government's recommendation, but also by [the] Government's passionate emphasis of aggravating factors in support of that recommendation, which brought public safety concerns to the forefront." *Id*. at 504-505. We adopt *Kirkland*'s method for resolving whether prosecutorial advocacy may affect a defendant's substantial rights, which focuses solely on the existing record rather than speculation:

> In sum, the record does not indicate that the district court would have imposed the same 300-month sentence had the Government complied with its obligations and recommended a low-end sentence instead of recommending and arguing for a high-end sentence. Accordingly, the Government's breach affected Kirkland's substantial rights because there is a reasonable probability that, but for the breach, he would have received a lesser sentence. [*Id*. at 505 (cleaned up).]

The same reasonable probability exists in this case.

A number of post-*Puckett* courts applying plain-error review have similarly found prejudice when the prosecution advocated for a maximum sentence despite a commitment not to do so. See, e.g., *United States v Dawson*, 587 F3d 640, 646 (CA 4, 2009) (noting that even though the prosecution's recommendation was not binding on the trial court, the defendant

-5-

established prejudice because he demonstrated a reasonable probability that the outcome of his sentence would have changed if the government had not made its recommendation); *United States v Hunter*, 835 F3d 1320, 1324-1325 (CA 11, 2016) (reversing and remanding for resentencing when the government did not just fail to make a recommendation, but argued against its own promised recommendation); *State v Adams*, 2014 Ohio 724; 8 NE3d 984, 991 (Ohio App, 2014) ("Likewise, the difference between standing silent and pressing for a maximum sentence of eight years is great. As appellant points out, it is difficult to affirmatively show that the sentence would have been different had the prosecutor fulfilled the state's promise to stand silent. Yet, it is also impossible to say, under the facts and circumstances of this case, that the state's pressing for a maximum eight-year sentence did not contribute to the trial court decision to impose six years."). Our resolution of the prejudice question is in line with these decisions. After all, "one really cannot calculate how the government's error and breach may have affected the perceptions of the sentencing judge." *United States v Alcala-Sanchez*, 666 F3d 571, 577 (CA 9, 2012).

We turn to the relief to which Jones is entitled; as we have noted, we may reverse only when an error has seriously affected the fairness, integrity or public reputation of the proceedings. Our Supreme Court has implicitly recognized that in the realm of plea bargains, "[t]he prosecuting attorney's strength stems from his charging power and his ability to make a sentencing recommendation to the judge." *People v Killebrew*, 416 Mich 189, 199; 330 NW2d 834 (1982). The fact that this recommendation is not binding does not diminish its potential impact on the sentencing decision. See *id*. at 200 n 4 ("It is crucial to the successful operation of plea bargaining that these 'recommendations' are usually accepted. Otherwise the bargain lacks sufficient certainty to induce a defendant to waive his right to trial."). See also *United States v Heredia*, 768 F3d 1220, 1230 (CA 9, 2014) ("In the vast majority of criminal cases, a prosecutor's promise of less harsh treatment induces the defendant to waive his constitutional rights and admit guilt.").

In the plea-bargaining context, our Supreme Court has specifically recognized that the integrity of the proceedings depends on the parties' truthfulness:

> Our formal recognition today that sentence concerns are appropriate subjects for plea negotiations will, it is hoped, sweep away the last vestiges of belief that the defendant must place reliance in covert promises of the prosecutor and utter hollow answers to the judge that no promises were made. It should hereafter be understood by everyone that sentence negotiations need not and shall not be made furtively. Honest responses to bargain inquiries, including sentence agreements, will facilitate appellate review. *More importantly, candor must be the order of the day to preserve the integrity of the court in the eyes of the defendant and the public*. [*Killebrew*, 416 Mich at 201 (emphasis added).]

Resentencing before a different judge is required in this case. When the prosecution breaches a plea agreement, the remedy may require "performance by the prosecution of its own promise—resentencing the defendant by a different judge without prosecutorial recommendation." *People v Siebert*, 450 Mich 500, 517; 537 NW2d 891 (1995) (emphasis omitted). Federal courts have concurred in this remedy "not due to lack of trust in the original sentencing judge's capacity for fairness, but to reestablish the trust between the defendant and

the government that is essential to the plea bargaining process." *Hunter*, 835 F3d at 1330. Resentencing before a trial court untainted by the prosecution's violation of the plea agreement is required to restore this trust.

We vacate defendant's sentence and remand for resentencing before a different judge. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly