# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-40255

United States Court of Appeals
Fifth Circuit

**FILED**

March 17, 2017

Lyle W. Cayce
Clerk

consolidated w/ 16-40256

UNITED STATES OF AMERICA,

>    Plaintiff - Appellee

v.

JAMES ROBERT KIRKLAND,

>    Defendant - Appellant

Appeals from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and KING and DENNIS, Circuit Judges.

JAMES L. DENNIS, Circuit Judge:

James Robert Kirkland appeals his sentence for attempting to use a means of interstate commerce to persuade, induce, entice, or coerce a minor to engage in sexual activity for which any person can be charged with a criminal offense, in violation of 18 U.S.C. § 2422(b). Kirkland pleaded guilty to the offense pursuant to a plea agreement that required the Government to recommend a sentence at the low end of the applicable guidelines range of 262–327 months. At sentencing, however, rather than recommend the low end of the guidelines range, the Government aggressively argued for a high-end sentence; Kirkland did not object to this apparent breach of the plea

No. 16-40255 c/w 16-40256

agreement. The district court ultimately imposed a midrange sentence of 300 months of imprisonment. On appeal, Kirkland argues that the Government's breach of the plea agreement constituted reversible plain error. For the reasons that follow, we agree and therefore vacate the sentence and remand for resentencing before a different district court judge.

I

In September 2015, an undercover detective, posing as the mother of fictitious 11- and 14-year-old daughters, placed an advertisement on Craigslist soliciting sexual partners for the fictitious girls. Kirkland, who at that time was on supervised release following his 2010 conviction for failing to register as a sex offender, responded to the advertisement and, over the course of multiple email communications, expressed his desire to engage in sexual conduct with the fictitious minors. After exchanging numbers and several text messages with the detective, Kirkland made plans to meet the fictitious mother at a mall in Corpus Christi, Texas. Kirkland arrived at the mall at the agreed upon time and was arrested. Police found condoms and packets of lubricant in his possession. After his arrest, Kirkland confessed that he intended to have sexual intercourse with the fictitious minors.

Kirkland was subsequently indicted on one count of attempting to use a means of interstate commerce to persuade, induce, entice, or coerce a minor to engage in sexual activity for which any person can be charged with a criminal offense, in violation of § 2422(b). The United States Probation Office also charged Kirkland with a violation of the conditions of his supervised release and sought revocation.

Kirkland pleaded guilty to the § 2422(b) offense pursuant to a plea agreement. Under the agreement, the Government was required to recommend that Kirkland receive "a sentence of imprisonment at the low end of the guideline[s] range." The Government also reserved the right to set forth

No. 16-40255 c/w 16-40256

its version of the facts at sentencing, dispute the relevant provisions of the guidelines, and to be released from its obligations under the agreement if Kirkland committed any additional crimes after signing the agreement.

The probation officer's presentencing report (PSR) calculated a guidelines range of 262–327 months of imprisonment, to which the Government did not object and which the district court ultimately adopted. The PSR also described Kirkland's criminal history, which included a 1999 North Carolina conviction for indecent liberties with a child, involving Kirkland's fondling of his eleven-year-old niece. Because of this conviction's age, it was not assigned criminal history points. Kirkland's criminal history also included North Carolina convictions for failure to register as a sex offender, bank robbery, and "unlawful concealment of two bags of candy," and a federal conviction for failure to register as a sex offender. The probation office also submitted a sentencing recommendation, recommending that Kirkland be sentenced to 300 months of imprisonment.

At sentencing, the district court asked several times for the Government's recommended sentence as to the § 2422(b) offense. Despite its obligation under the plea agreement to recommend the low end of the guidelines range, the Government recommended the high end, 327 months of imprisonment. In support of its recommendation, the Government presented the testimony of Special Agent Heath Hardwick. Agent Hardwick described, in great detail, Kirkland's 1999 North Carolina conviction for indecent liberties with a child, allegations of prior conduct of similar nature that did not result in criminal proceedings, and Kirkland's instant § 2422(b) offense. The Government also strongly argued in support of its recommendation for a sentence at the high end of the guidelines range, citing the circumstances of Kirkland's offense, his prior criminal history, and the underrepresentation of his criminal history in his criminal history category calculation.

No. 16-40255 c/w 16-40256

When the district court and Kirkland discussed what sentence was appropriate, Kirkland focused somewhat angrily on the Government's request for a sentence at the high end of the range and equated the requested 327-month term to a life sentence.  Kirkland's counsel argued on his behalf for a below-guidelines sentence of 151 months.  However, Kirkland and his counsel did not object to the Government's apparent breach of its obligation to recommend the low end of the guidelines range.

The district court sentenced to Kirkland to 300 months of imprisonment as to the § 2422(b) offense, stating, "That is midpoint in the guideline range.  It also happens to be the recommended sentence from the United States Probation Office, which, frankly, happens to coincide with my own independent decision."  The district court explained its reasons for the sentence, including Kirkland's criminal history, the instant offense conduct, and the need to protect the public.

With respect to his supervised release, Kirkland pleaded true to a violation of the terms.  The probation office recommended twelve months of imprisonment to be served consecutive to the § 2422(b) sentence, but the court sentenced Kirkland to a consecutive term of twenty-four months.  Kirkland appealed his § 2242(b) sentence as well as his revocation sentence, and these appeals were consolidated.  However, Kirkland has abandoned any challenge to his revocation sentence.

II

Kirkland challenges only the Government's breach of the plea agreement.  Because Kirkland failed to object to the Government's breach before the district court, we review his challenge for plain error.  *See Puckett v. United States*, 556 U.S. 129, 133–34 (2009).  Under this standard, we apply a four-prong test to determine whether we have discretion to remedy a forfeited error:

4

No. 16-40255 c/w 16-40256

First, there must be an error that has not been intentionally relinquished or abandoned. Second, the error must be plain—that is to say, clear or obvious. Third, the error must have affected the defendant's substantial rights, which in the ordinary case means he or she must show a reasonable probability that, but for the error, the outcome of the proceeding would have been different. Once these three conditions have been met, the court of appeals should exercise its discretion to correct the forfeited error if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) (citations and internal quotation marks omitted).

The Government concedes that it erred by breaching the plea agreement and that the error was clear or obvious.[1] However, the Government disputes that this error affected Kirkland's substantial rights or seriously affects the fairness, integrity, or public reputation of judicial proceedings. For the reasons that follow, we conclude that Kirkland has made a sufficient showing as to both of these requirements.

A. Effect on Substantial Rights

In the context of sentencing, "[a]n error affects an appellant's substantial rights when there is a reasonable probability that, but for the error, he would have received a lesser sentence." *United States v. Williams*, 821 F.3d 656, 657–58 (5th Cir.) (internal quotation marks omitted), *reh'g denied*, 833 F.3d 449 (5th Cir. 2016). The Government's breach of its promise to recommend a lesser sentence affects a defendant's substantial rights unless the record indicates that that the district court would have imposed the same sentence regardless of the Government's breach. *See, e.g.*, *id.* at 658 (Government's breach of plea

---

[1] The Government's concession is correct. The plea agreement required the Government to recommend a sentence at the low end of the guidelines range, but the Government did not comply. We have previously found such a breach to be a clear or obvious error. *See United States v. Williams*, 821 F.3d 656, 657–58 (5th Cir.), *reh'g denied*, 833 F.3d 449 (5th Cir. 2016).

agreement affected defendant's substantial rights where there was no indication that the district court would have imposed the same sentence had Government complied with the agreement); *United States v. Bellorin-Torres*, 341 F. App'x 19, 20–21 (5th Cir. 2009) (similar); *United States v. Villarreal-Rodriguez*, 356 F. App'x 759, 761 (5th Cir. 2009) (similar).  This principle reflects both the applicable legal standard, under which a defendant need only show a "reasonable probability" that the breach affected his sentence, *see Williams*, 821 F.3d 656, 657–58, and the common sense understanding of the important role the Government's recommendation plays in sentencing, *cf. United States v. Navarro*, 817 F.3d 494, 500 (7th Cir. 2016) ("[T]he Supreme Court long ago recognized the importance of the government's recommendation on the sentence imposed."  (citing *Santobello v. New York*, 404 U.S. 257, 262 (1971)).

In *Williams*, the plea agreement required the Government to recommend a sentence at the bottom of the guidelines range, but the Government failed to make the recommendation at sentencing, without objection from the defendant.  821 F.3d at 657.  The district court ultimately sentenced the defendant to the top of the guidelines range.  *Id.*  Reviewing for plain error, we concluded that the Government's breach affected the defendant's substantial rights because there was "no indication the district court would have been unmoved by the Government's recommendation for a lower sentence."  *Id.* at 658.

The Government's breach of its plea agreement with Kirkland is even worse than its breach of the agreement in *Williams*.  Here, the Government did not merely remain silent, in breach of its promise to urge a low-end sentence; rather, the Government aggressively argued for the high end of the guidelines range.  Thus, we must consider not only the possibility that the district court *would have been* influenced by the Government's

No. 16-40255 c/w 16-40256

recommendation for a low-end sentence but also the possibility that the district court *was* influenced by the Government's recommendation of, and argument for, a high-end sentence.   In two unpublished decisions involving similar circumstances, we concluded that the Government's actions affected the defendants' substantial rights. *See Bellorin-Torres*, 341 F. App'x at 21; *United States v. Onwuka*, 71 F.3d 878, 878 (5th Cir. 1995) (unpublished).

The Government argues that the record in this case indicates that its breach did not affect the district court's sentence, and it points in support to the district court's consideration of the PSR, the guidelines range, the various recommendations the court received, and the relevant sentencing factors.   The Government also highlights the district court's statement that the 300-month sentence it imposed was the "midpoint in the guideline range" and "also happens to be the recommended sentence from the United States Probation Office, which, frankly, happens to coincide with [the court's] own independent decision."   On this basis, the Government asserts that there is sufficient evidence that the district court would have imposed the same exact sentence regardless of the Government's breach.   We cannot accept this contention.

It is certainly true that the district court considered the relevant circumstances and did not consider itself bound by the Government's recommendation.   After all, the court did not adopt the Government's recommendation for a high-end sentence but, instead, imposed a midrange sentence.   The district court also showed that it was willing to sentence above any recommendation where it deemed fit, as it did with regard to the revocation of Kirkland's supervised release.   However, the fact that the court exercised independent judgment—which it must do in every case—does not mean that the court did not also consider and give weight to the Government's recommendation.   Indeed, the district court asked the Government for its recommendation several times.

7

No. 16-40255 c/w 16-40256

Moreover, the Government did not merely recommend a high-end sentence but also strongly argued and presented testimony in support of that recommendation, recounting in great detail the graphic and sexually explicit facts involved in Kirkland's offense of conviction and a prior offense and emphasizing his criminal history and his violation of the conditions of his supervised release. The testimony and argument by the Government filled more than nine pages of the sentencing transcript. Therefore, the district court may have been influenced not only by the Government's recommendation, but also by Government's passionate emphasis of aggravating factors in support of that recommendation, which brought public safety concerns to the forefront. *Cf. Navarro*, 817 F.3d at 501 (the Government's breach of the plea agreement by arguing for an upward departure affected the defendant's substantial rights because it "focused the district court's attention" on the relevant application note, "with the weight of the [G]overnment's recommendation behind it").

In sum, the record does not indicate that the district court would have imposed the same 300-month sentence had the Government complied with its obligations and recommended a low-end sentence instead of recommending and arguing for a high-end sentence. *See Williams*, 821 F.3d at 658; *Bellorin-Torres*, 341 F. App'x at 20–21; *Villarreal-Rodriguez*, 356 F. App'x at 761; *Onwuka*, 71 F.3d at 878. Accordingly, the Government's breach affected Kirkland's substantial rights because there is a reasonable probability that, but for the breach, he would have received a lesser sentence.

B. Serious Effect on the Fairness, Integrity, or Public Reputation of Judicial Proceedings

In the fourth prong of the plain-error analysis, we ask whether the forfeited error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Molina-Martinez*, 136 S. Ct. at 1343. This prong is not automatically satisfied once the other three prongs are met. *United States v.*

8

No. 16-40255 c/w 16-40256

*Escalante-Reyes*, 689 F.3d 415, 425 (5th Cir. 2012) (en banc). "However, the Supreme Court has instructed that 'the discretion conferred by Rule 52(b) should be employed in those circumstances in which a miscarriage of justice would otherwise result.'" *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

Whether a plain error would lead to a miscarriage of justice if left uncorrected is determined "on a case-specific and fact-intensive basis." *Puckett v. United States*, 556 U.S. 129, 142 (2009). Nevertheless, the courts have recognized that the Government's breach of a plea agreement constitutes a particularly egregious error that, in the absence of strong countervailing factors, seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See, e.g.*, *id.* at 142–43 (stating that "when the Government reneges on a plea deal, the integrity of the system may be called into question" but noting that "there may well be countervailing factors in particular cases"); *Williams*, 821 F.3d at 658 (concluding, without additional discussion, that "the Government's failure to fulfill its promise affects the fairness, integrity, and public reputation of judicial proceedings" (alteration and internal quotation marks omitted)); *United States v. Whitney*, 673 F.3d 965, 974 (9th Cir. 2012) ("[I]n the absence of clearly countervailing factors, the government's breach of the parties' plea agreement must be considered a serious violation of the integrity of the plea bargain process and the judicial system."); *United States v. Swanberg*, 370 F.3d 622, 629 (6th Cir. 2004) ("[V]iolations of the plea agreement on the part of the government . . . directly involve the honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government." (Internal quotation marks omitted)).

This rebuttable presumption that the Government's meaningful breach of a plea agreement satisfies the fourth prong of the plain-error test appears to

9

be based, in large part, on the inherent unfairness involved in the Government's inducement of the defendant's waiver of important constitutional rights by making promises that it ultimately does not keep. *See United States v. Goldfaden*, 959 F.2d 1324, 1328 (5th Cir. 1992) ("Defendants . . . give up constitutional rights in reliance on promises made by prosecutors, implicating the Due Process Clause once the court accepts their pleas. The failure of the Government to fulfill its promise, therefore, affects the fairness, integrity, and public reputation of judicial proceedings." (Citation omitted)) *abrogated on other grounds as recognized in United States v. Puckett*, 404 F.3d 377, 384–85 (5th Cir. 2007); *see also*, *e.g.*, *Whitney*, 673 F.3d at 974 (discussing the Government's inducement of the defendant's waiver of important rights); *Swanberg*, 370 F.3d at 629 (the Government's breach of the plea agreement serves to violate the defendant's constitutional rights).

It is important to highlight the rebuttable nature of this presumption. In *Puckett*, the Supreme Court "emphasized that a per se approach to plain-error review is flawed," and stated that "countervailing factors in particular cases" may warrant affirmance in the face of a meaningful plain error. 556 U.S. at 142–43 (some internal quotation marks omitted). The Court saw the particular defendant in *Puckett* as a good example of such a case. *Id.* at 143. Under Puckett's plea agreement, the Government was to inform the district court that it agrees that Puckett qualified for a three-level reduction in his offense level for acceptance of responsibility. *Id.* at 131. Puckett's sentencing was delayed and did not take place for almost three years after the district court accepted his plea. *Id.* at 132. During that time, Puckett engaged in additional criminal activity. *Id.* At sentencing, the Government opposed the reduction in Puckett's offense level on that basis and thereby breached its obligation under the plea agreement. *See id.* In discussing the fourth prong of the plain-error test, the Court stated, "Given that [Puckett] obviously did not

cease his life of crime, receipt of a sentencing reduction for *acceptance of responsibility* would have been so ludicrous as itself to compromise the public reputation of judicial proceedings." *Id.* at 143 (emphasis in original).

We find no similarly strong countervailing factors in the instant case. As it did in the district court, the Government points on appeal to the disturbing facts of Kirkland's offense of conviction and to his equally disturbing criminal history. The Government also suggests that Kirkland has benefited from the "fortuitous operation" of the guidelines, which prevented Kirkland's 1999 conviction from earning additional criminal history points. However, the Government was aware of the nature of Kirkland's offense, his criminal history, and the operation of the guidelines when, in the face of all of these factors, it agreed to recommend the low end of the guidelines range in exchange for Kirkland's guilty plea and his surrender of his constitutional rights. As Kirkland notes in his brief, the deplorable nature of his offenses is "precisely why he bargained for the government's statement that, notwithstanding those facts, a sentence at the bottom of the advisory range was sufficient in light of all the applicable sentencing factors." The Government cannot extract benefits from a defendant who it knows has committed bad acts and later argue that it should not be held to its bargain because the defendant has committed those bad acts. Additionally, we note that a sentence at the low end of the guidelines range would have been presumptively reasonable. *See United States v. Alonzo*, 435 F.3d 551, 554 (5th Cir. 2006) ("[A] sentence within a properly calculated Guideline range is presumptively reasonable."). Thus, unlike in *Puckett*, there would be nothing inherently objectionable in Kirkland's receipt of the benefit of his plea agreement. *Cf.* 556 U.S. at 143.

In this light, we believe that denying Kirkland the benefit of his bargain would be manifestly unjust and therefore conclude that the Government's breach of the plea agreement satisfies the fourth prong of the plain-error test.

No. 16-40255 c/w 16-40256

III

The Government's breach of its obligations under its plea agreement with Kirkland satisfies all four prongs of the plain error test and therefore constitutes reversible plain error. *See Molina-Martinez*, 136 S. Ct. at 1343. When we conclude that the Government's breach of a plea agreement constitutes reversible error, a defendant can choose one of two remedies: "[1] specific performance of the plea agreement and resentencing before a different judge, or [2] withdrawal of the guilty plea." *Williams*, 821 F.3d at 658. Kirkland requests specific performance of the plea agreement at a resentencing before a different district court judge. Accordingly, we VACATE Kirkland's sentence and REMAND for resentencing before a different judge.