REVISED

# United States Court of Appeals for the Fifth Circuit

No. 19-50628

United States Court of Appeals
Fifth Circuit

**FILED**
July 16, 2021

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Braxton Hudgens,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC 7:19-CR-4-1

Before Jones, Clement, and Graves, *Circuit Judges*.

Edith Brown Clement, *Circuit Judge*:

Braxton Hudgens entered an open guilty plea to both counts of a two-count indictment alleging conspiracy to possess with intent to distribute heroin and methamphetamine. Based upon an upward variance, the district court imposed a 240-month sentence on each count, to run concurrently. Hudgens argues that his sentence was substantively unreasonable. For the reasons set forth below, we affirm.

No. 19-50628

## I.

Odessa Police Department officers and detectives and local fire department personnel responded to an emergency call about a potential drug overdose on November 3, 2018.  When they arrived, they discovered a 24-year-old woman ("A.F.") unconscious and not breathing.  A.F. was transported to the hospital, where she was later pronounced dead.

According to a witness, Hudgens, who was A.F.'s boyfriend, had provided A.F. with heroin the night before.  Soon after she had ingested the heroin, A.F. became heavily intoxicated, extremely lethargic, and her lips turned purple.  Despite A.F.'s history of cardiac issues, Hudgens dissuaded the witness from calling 911 because his son was present, and he was concerned about getting into trouble.  Instead, Hudgens called a friend, who brought methamphetamine to the house.  Hudgens was aware of A.F.'s medical conditions.  Still, he attempted to reverse the effects of the heroin by injecting A.F. with methamphetamine before going to sleep.  Several hours later, the witness awoke and attempted to wake A.F., who was unresponsive.  The witness then told Hudgens that she was going to call the police.

Before A.F. died, she had been receiving treatment for cardiomegaly (an enlarged heart) and had undergone heart surgery.  When she died, her heart was enlarged to four times its normal size.  The medical examiner determined that, "[w]hile it is possible drug use contributed to [A.F.'s] death, her preexisting health conditions prevent [a] showing of 'but-for' causation."  Accordingly, the Presentence Investigation Report ("PSR") stated that there was no identifiable victim for Hudgens's offenses.  Hudgens was subsequently indicted and pled guilty to charges of conspiracy to possess with intent to distribute heroin and methamphetamine, in violation of 21

No. 19-50628

U.S.C. §§ 841 and 846.  But the government did not pursue the enhanced penalty under § 841(b)(1)(C) for drug distribution that resulted in death.[1]

At sentencing, the district court found the PSR accurate and adopted the Guidelines calculations as set forth in the report.  Initially, Hudgens's Guidelines range was 97 to 121 months for each offense, which was based on a total offense level of 29 and Criminal History Category II.  Because these offenses carry a mandatory-minimum sentence of ten years, however, Hudgens's Guidelines range was adjusted to 120 to 121 months.

Hudgens's counsel argued that A.F. was a participant in—and not a victim of—Hudgens's offenses.  He noted that A.F. voluntarily used the drugs that evening, and that, following the injection from Hudgens, A.F. requested to smoke more methamphetamine to stay awake.  He further argued that the ten-year mandatory minimum was "baked in" to the sentences and that the mandatory minimum provided sufficient respect for the law and was a just punishment for the offense without the need for an upward variance.  During that time, counsel argued, the public would be protected from Hudgens, and he would be able to get educational and vocational training, in addition to attending a drug treatment program.  Hudgens himself also apologized to A.F.'s family and told the court that he was "not trying to avoid responsibility at all."

The government responded that, although Hudgens may not have caused A.F.'s death under *Burrage v. United States*, 571 U.S. 204, 218–19 (2014), he "certainly displayed abject depravity by not doing the most

---

[1] This enhancement would have altered the minimum and maximum sentences to which Hudgens was exposed. *See* § 841(b)(1)(C).  Accordingly, if the government had wished to pursue the enhanced penalty, it would have had to prove beyond a reasonable doubt that A.F.'s intoxication was a "but-for" cause of her death. *Burrage v. United States*, 571 U.S. 204, 209–10 (2014).

simple, humane thing [he] could have done[,] which was call for help." The government contended that A.F.'s "life was valuable, and the sentence should reflect that." The court agreed with the government, finding the Guidelines range "unfair and unreasonable" and choosing to upwardly vary. The court added that, "[i]f the government had been able to charge Mr. Hudgens with distribution of methamphetamine which resulted in death, then we would have had a mandatory minimum term of imprisonment of 20 years, 240 months, along with ten years of supervised release." The district court then sentenced Hudgens to 240 months of imprisonment on Counts One and Two, to run concurrently, as well as five years of supervised release on Count One, and three years on Count Two, to run concurrently.

Hudgens's counsel objected, and he timely appealed. His appeal was placed in abeyance until we decided *United States v. Bostic*, 970 F.3d 607 (5th Cir. 2020).[2]

## II.

When reviewing a sentence's reasonableness, we first determine whether a sentence is procedurally unreasonable before considering its substantive reasonableness. *Bostic*, 970 F.3d at 610. Although Hudgens's counsel objected to his sentence on both procedural and substantive grounds, Hudgens addresses only the substantive reasonableness of his sentence on appeal. *See United States v. Harrison*, 777 F.3d 227, 236 (5th Cir. 2015); *United States v. Brown*, 261 F. App'x 810, 812–13 (5th Cir. 2008) (per curiam)

---

[2] Hudgens called Corey Reeves Bostic the night A.F. overdosed, and Bostic provided the methamphetamine that Hudgens injected into A.F.'s nasal cavity. Bostic challenged his own 235-month sentence on the grounds that it was procedurally and substantively unreasonable. *Bostic*, 970 F.3d at 610. Because the court held that Bostic's sentence was procedurally unreasonable, it did not reach the issue of substantive reasonableness. *Id.* at 612.

No. 19-50628

(stating that an issue is waived when it is not raised in an opening brief (citing *United States v. Jackson*, 426 F.3d 301, 304 & n.2 (5th Cir. 2005))). Therefore, we will confine our analysis to whether the district court's sentence was substantively unreasonable.[3]

---

[3] The dissent contends that we mistake the standard espoused in *Gall v. United States*, 552 U.S. 38 (2007), and *United States v. Fraga*, 704 F.3d 432 (5th Cir. 2013), inappropriately omitting analysis of the procedural reasonableness of Hudgens's sentence. But our precedent belies this contention. *See, e.g.*, *United States v. Rodriguez*, 660 F.3d 231, 233–34 (5th Cir. 2011) (noting that the court undertakes a bifurcated analysis of sentences but addressing only whether the sentence was substantively unreasonable because "Rodriguez [did] not contend that the district court's decision [was] procedurally unsound"); *United States v. Brantley*, 537 F.3d 347, 349 (5th Cir. 2008) (stating that the first issue to consider is whether the district court made a procedural error but declining to analyze the procedural reasonableness of Brantley's sentence—and analyzing only the substantive reasonableness of the sentence—because he did not raise a procedural challenge); *see also United States v. Ayala-Ura*, 544 F. App'x 341, 343–44 (5th Cir. 2013) (per curiam) (analyzing the substantive reasonableness of a sentence without analyzing the procedural reasonableness of the same); *United States v. Uribe-Almaraz*, 464 F. App'x 320, 321–22 (5th Cir. 2012) (per curiam) (same); *United States v. Hernandez*, 431 F. App'x 370, 370–71 (5th Cir. 2011) (per curiam) (same). *But see, e.g.*, *United States v. McElwee*, 646 F.3d 328, 337 (5th Cir. 2011) (considering first the procedural reasonableness of a sentence before the substantive reasonableness where the "core of Appellants' complaints on appeal" were challenges to substantive reasonableness).

Furthermore, Hudgens's brief does not include a procedural reasonableness challenge, in form or in substance.

> Procedural error includes "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.

*Bostic*, 970 F.3d at 610 (quoting *Gall*, 552 U.S. at 51). In comparison, consideration of the substantive reasonableness of a sentence involves the "totality of the

No. 19-50628

We review the substantive reasonableness of a criminal sentence for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 46 (2007); *United States v. Fraga*, 704 F.3d 432, 437 (5th Cir. 2013) (reviewing a sentence for substantive reasonableness under an abuse of discretion standard "regardless of whether the sentence imposed is inside or outside the Guidelines range"). The "Guidelines should be the starting point and the initial benchmark" for sentencing. *Gall*, 552 U.S. at 49. However, "[a] deviation from the Guidelines range will not alone make a sentence substantively unreasonable," *United States v. Rhine*, 637 F.3d 525, 529 (5th Cir. 2011) (citing *Gall*, 552 U.S. at 47), and "[a]ppellate review of the substantive reasonableness of a sentence is highly deferential," *United States v. Hoffman*, 901 F.3d 523, 554 (5th Cir. 2018) (internal quotation and citation omitted).

But the sentencing court's discretion is not unlimited. Appellate review is meant to "assist in avoiding excessive sentencing disparities while

---

circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51. Thus, both incorporate consideration of any variances. But the latter requires a determination that, "as a matter of substance, the sentencing factors in [§] 3553(a) support the sentence." *United States v. Smith*, 440 F.3d 704, 707–08 (5th Cir. 2006); *see id.* (indicating that the sentencing factors fail to do so where a non-Guideline sentence "(1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors").

The discussion in Hudgens's brief involves the application of *Burrage* and the extent of the variance. Hudgens's concern about the extent of the variance is ultimately a disagreement with the district court's decision and its judgment as to the weight afforded to the § 3553(a) factors—rather than an allegation of an inadequate explanation or a failure to explain. *See Gall*, 552 U.S. at 51 (stating that we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance" when reviewing a sentence's substantive reasonableness). That is a substantive reasonableness challenge.

No. 19-50628

maintaining flexibility sufficient to individualize sentences where necessary." *Id.* at 555 (cleaned up). We "'may consider the extent of the deviation' from the Guidelines when performing [our] limited function as a check on extreme ones." *Id.* (quoting *Gall*, 552 U.S. at 51).

To determine whether a sentence is substantively reasonable, a district court should consider "the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51. A district court must articulate its reasons for a particular sentence more thoroughly when it imposes a non-Guidelines sentence, and the reasons should be "fact-specific and consistent with the factors enumerated in [18 U.S.C. §] 3553(a)." *United States v. Smith*, 440 F.3d 704, 707 (5th Cir. 2006); *Gall*, 552 U.S. at 49–50 ("[A] major departure should be supported by a more significant justification than a minor one."). "A non-Guideline sentence unreasonably fails to reflect the statutory sentencing factors where it (1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." *Smith*, 440 F.3d at 708.

III.

Hudgens contends that the district court (1) made a clear error in judgment in weighing the § 3553(a) factors, (2) imposed an unreasonable variance, and (3) improperly considered that the drugs Hudgens provided A.F. caused her death for the purposes of the enhanced penalty under § 841(b)(1)(C) and *Burrage*. We address each argument in turn.

First, nothing prevents a sentencing court from considering the fact that death resulted from an offense. *See* § 3553(a)(1), (2). Indeed, at least one of our sister circuits has upheld a sentence as substantively reasonable where the district court varied upward, basing its sentencing decision "in

large part on [the defendant's] involvement in three fatal overdoses that occurred in his house." *United States v. Lewis*, 819 F. App'x 718, 721 (11th Cir. 2020) (per curiam) ("[The defendant] had continued to supply drugs to [a co-defendant] even though he knew that she was reselling or sharing the drugs that he provided, and even as people were dropping dead from those drugs." (internal quotation omitted)).  Furthermore, contrary to Hudgens's argument that the mandatory minimum "baked in" to the sentence sufficiently accounted for the concerns contemplated by the § 3553(a) factors, our precedent permits "district courts to rely on 'factors already incorporated by the Guidelines to support a non-Guidelines sentence.'" *United States v. Montanez*, 797 F. App'x 145, 149 (5th Cir. 2019) (per curiam) (quoting *United States v. Brantley*, 537 F.3d 347, 350 (5th Cir. 2008)).  Thus, the court's consideration of A.F.'s death in fixing Hudgens's sentence was not a clear error in judgment.

Second, the upward variance falls within the statutory maximum.  *See United States v. Rosales-Bruno*, 789 F.3d 1249, 1256–57 (11th Cir. 2015) (stating that whether the variance exceeds the statutory maximum is a factor to be considered in determining a sentence's substantive reasonableness).  And, this court has previously upheld similarly "major" upward variances. *See Hoffman*, 901 F.3d at 565 (Dennis, J., concurring in part and dissenting in part) (collecting cases upholding upward variances); *United States v. Irey*, 612 F.3d 1160, 1196 (11th Cir. 2010) (en banc) (collecting cases defining "major variances"); *see also United States v. Jones*, 444 F.3d 430, 441–42 (5th Cir. 2006) (affirming 120-month upward variance from a Guidelines maximum of 57 months).  This includes upholding a 240-month sentence, based upon an upward variance and departure from a Guidelines range of 120 to 121 months, for a defendant's conviction for possession with intent to distribute cocaine. *See United States v. Young*, 396 F. App'x 180, 181–82 (5th Cir. 2010) (per

curiam).[4] Not to mention, this court recently suggested that it would uphold an almost identical sentence to the one Hudgens received. *See Bostic*, 970 F.3d at 612 (vacating a 235-month sentence for procedural unreasonableness where the district court imposed a 208-month upward variance but stating that "[o]ur ruling should not be interpreted as taking a position on whether this same sentence could be justified by a more fulsome explanation"); *see also Gall*, 552 U.S. at 51 ("[The court] may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance.").

Therefore, the critical question posed is not the propriety of the extent of the variance nor one of a clear error of judgment, but is, instead, whether the district court gave significant weight to an improper factor: the enhanced penalty under § 841(b)(1)(C). Accordingly, we focus on Hudgens's contention that the district court improperly relied on the heroin and methamphetamine as the cause of A.F.'s death.

In imposing the variance, the court specifically articulated Hudgens's would-be Guidelines range had the prosecution been able to pursue the enhanced penalty for distributing heroin and methamphetamine resulting in death. § 841(b)(1)(C). And, it did so *despite* the fact that the medical examiner could not conclude that the drug use alone caused A.F.'s death and *Burrage* precluded the prosecution from bringing such a charge. 571 U.S. at 218–19. Alone, the district court's statement immediately before imposing Hudgens's sentence might have been revealing.

---

[4] This court has also upheld a 240-month sentence as substantively reasonable, in which the sentencing court varied upward from a Guidelines range of 63 to 78 months to the statutory maximum. *Cf. United States v. Aguillard*, 476 F. App'x 8 (5th Cir. 2012) (per curiam).

No. 19-50628

> If the government had been able to charge Mr. Hudgens with distribution of methamphetamine which resulted in death, then we would have had a mandatory minimum term of imprisonment of 20 years, 240 months, along with ten years of supervised release.  If the guideline were applied with this charge, you would have had a total offense level of 37, Criminal History Category II, base offense level 38 and an additional[] two points for obstruction of justice pursuant to 3C1.1 of the guidelines.  So the custody term for that calculation would have been 235 months to 293 months, . . . .  The defendant is placed in the custody of the United States Bureau of Prisons to serve a term of imprisonment of 240 months.

Based on this statement, Hudgens argues that the district court abused its discretion by effectively sentencing him as though he had been convicted under the enhanced penalty provision of § 841(b)(1)(C). *Cf. United States v. Mathes*, 759 F. App'x 205 (5th Cir. 2018) (unpublished) (Graves, Jr., J.) (holding the district court abused its discretion by imposing a substantively unreasonable sentence where it placed improper emphasis on a dismissed firearm charge).[5]

There is a distinction, however, between improperly punishing Hudgens for causing A.F.'s death and considering Hudgens's behavior in the face of A.F.'s fatal intoxication and under the totality of the circumstances.

---

[5] The dissent twice asserts that the 240-month sentence imposed by the district court is the sentence Hudgens would have received if the government had been able to charge Hudgens with the § 841(b)(1)(C) enhancement.  This is incorrect.  If the enhancement had applied, Hudgens would have been subject to a 240-month mandatory minimum, but his Guidelines range would have been 235 to 293 months.  The dissent ignores this portion of the district court's statements; it is a mischaracterization of the district court's sentencing colloquy to say that Hudgens would have been sentenced to 240 months' imprisonment had the government been able to pursue the enhancement.

*Cf. Lewis*, 819 F. App'x at 721.  We conclude that the district court did the latter.[6]  The court noted that Hudgens brought heroin to A.F.'s residence and allowed her to ingest it.  And it reiterated that Hudgens did so knowing of A.F.'s heart problems.

Most of all though, the district court focused on Hudgens's behavior during the critical moments when he might have saved A.F.'s life.  "*Instead of helping her*," the district court emphasized, "[Hudgens] recorded a cell phone video as [he] smacked her in the face with a towel, called her names."[7]  Worse still, the court acknowledged that when A.F. "finally stopped breathing," Hudgens "disposed of drug paraphernalia prior to the arrival of

---

[6] We also note that the mere mention of uncharged offenses and the effects they may have had on a defendant's Guidelines range do not strike us as categorically improper considerations.  *See, e.g.*, *Irey*, 612 F.3d at 1166 ("The horrific nature of [the defendant's] crimes resulted in an adjusted offense level that would have led to an advisory guidelines range of life imprisonment.  Because the government had charged all of [the defendant's] crimes in just one count, the statutory maximum was 30 years and that had the effect of reducing the guidelines range to 30 years as well."); *see also United States v. Borromeo*, 657 F.3d 754, 756 (8th Cir. 2011) (affirming a district court's sentence for producing child pornography as substantively reasonable where the defendant argued the court gave too much weight to the uncharged abuse of other minors); *cf. United States v. Rosales*, 768 F. App'x 195, 198 (5th Cir. 2019) (per curiam) ("[T]he district court's inquiries were, at most, 'passing remarks . . . .'"); *United States v. Hernandez-Martinez*, 485 F.3d 270, 271–72 (5th Cir. 2007) (imposing a sentence within the Guidelines range for an uncharged offense of illegal reentry upon a violation of the conditions of the defendant's supervised release).

[7] The PSR describes the 55-second video in more detail.  Far from an attempt to revive A.F., Hudgens was mocking A.F. as he hit her.  The "names" to which the district court referred were a string of profanities.  All the while, A.F. was unresponsive to Hudgens's comments and actions and struggled even to maintain her balance while sitting on the bed.  When the district court addressed the nature and circumstances of the offense, it noted that "the government ha[d] chosen, and wisely, not to play the video recording of that night."

law enforcement and emergency medical personnel"—behavior that earned him two additional levels for obstruction of justice in the calculation of his total offense level. And, after all of this, Hudgens was still not the person who contacted 911.

In accordance with the Probation Officer's recommendation,[8] the district court underscored the fact that "[a] quantity of meth was used . . . in a reckless and senseless manner when Mr. Hudgens *injected methamphetamine into A.F.['s nasal cavity]* while she was overdosing on heroin." It reiterated that "Mr. Hudgens was reckless and careless regarding the circumstances of [A.F.'s] intoxication and subsequent medical emergency . . . ." The court explicitly stated that, because of Hudgens's behavior, an upward variance was "required and sufficient to provide just punishment for the offense." *See* 18 U.S.C. § 3553(a)(2)(A); *Brantley*, 537 F.3d at 350 (permitting consideration of factors already incorporated by the Guidelines to support a non-Guidelines sentence).

The court further added in reaching its conclusion that "[t]he unique circumstances of this offense are serious in nature . . . and respect for the laws is needed in this case." *See* § 3553(a)(2)(A). And it also explicitly considered Hudgens's criminal history in reaching its conclusion. *See* § 3553(a)(1). Although the line is fine between improperly weighing the enhanced penalty

---

[8] The PSR states:

The defendant's actions surrounding A.F.'s death should be considered under 18 U.S.C. § 3553(a)(1) and 18 U.S.C. § 3553(a)(2)(A). The unique circumstances of this offense are serious in nature and respect for the law is needed in this case. The defendant was reckless and careless regarding the circumstances of A.F.'s intoxication and subsequent medical emergency, and a sentence above the guideline range appears to be sufficient to provide just punishment for the offense.

and appropriately considering Hudgens's behavior under the totality of the circumstances, the district court successfully threaded the needle. *Hoffman*, 901 F.3d at 554 (applying a highly deferential standard of review); *see Gall*, 552 U.S. at 51 ("The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court."); *Rosales-Bruno*, 789 F.3d at 1259 ("A sentence's variance outside the guidelines range, whether upward or downward, represents a district court's judgment that the combined force of the other § 3553(a) factors are entitled to greater weight than the guidelines range.").

We hold that, together, these findings in support of the upward variance are sufficient to demonstrate that the substance of the sentence is reasonable under § 3553(a). *See Gall*, 552 U.S. at 51 ("The sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record.") (citation omitted).

Accordingly, Hudgens's sentence is AFFIRMED.

No. 19-50628

James E. Graves, Jr., *Circuit Judge*, dissenting:

The medical examiner, the government, the district court and the majority all concede that Hudgens was not liable for an § 841(b)(c) enhancement under *Burrage v. United States*, 571 U.S. 204, 218-19 (2014), based on A.F.'s death.  But that is exactly what happened.  Because I would vacate and remand for resentencing consistent with *United States v. Bostic*, 970 F.3d 607 (5th Cir. 2020), I respectfully dissent.

The district court explicitly stated that, "[i]f the government had been able to charge Mr. Hudgens with distribution of methamphetamine which resulted in death, then we would have had a mandatory minimum term of imprisonment of 20 years, 240 months, along with ten years of supervised release."[1]  The district court then sentenced Hudgens to exactly 240 months of imprisonment on both counts, concurrently.

Hudgens' case was held in abeyance until this court decided *United States v. Bostic*, 970 F.3d 607, 612 (5th Cir. 2020).  *Bostic* involved the same district judge and the same errors.  As set out by this court, the district court in *Bostic* said:

> '[I]f the government had been able to charge [Bostic] with distribution of methamphetamine which resulted in death, [Bostic] would have faced a mandatory minimum term of imprisonment of 20 years and a minimum of ten years of supervised release.' The district court sentenced Bostic to 235 months of imprisonment and 3 years of supervised release. Bostic's counsel objected to the sentence as procedurally and substantively unreasonable.

---

[1] The majority takes issue with this statement, calling it incorrect and a "mischaracterization" of the district court's statements.  However, this is a direct quote from the district court.  Moreover, the district court explicitly acknowledged that it was making the same analysis that was made in *Bostic*. *Id*.

*Id.* at 610. On appeal, this court concluded that Bostic's sentence was procedurally unreasonable. This court did so even though the district court in *Bostic* did not give him exactly 240 months, as the district court did with Hudgens. Here, the district court sentenced Hudgens to exactly what his sentence would have been if the government had been able to charge him with distribution that resulted in A.F.'s death.

The majority attempts to distinguish *Bostic* on the basis that this court said Bostic's sentence was *procedurally* unreasonable, whereas here, the majority says Hudgens raises only substantive reasonableness. The majority acknowledges that Hudgens objected on both substantive and procedural grounds. Citing portions of the briefs, the majority says Hudgens only addressed substantive reasonableness on appeal. Indeed, Hudgens' brief does include a subheading for "2. Substantive reasonableness." However, the actual issue stated is whether "the district court imposed an unreasonable upward departure sentence upon appellant." The discussion of that one issue then continues for many pages, encompassing both procedural and substantive reasonableness arguments.

In *Bostic*, this court said:

> We review criminal sentences for reasonableness. First, we determine whether the district court's sentence was procedurally unreasonable. If the sentencing decision is procedurally sound, we then consider its substantive reasonableness, reviewing for abuse of discretion. Though they are not the only consideration, "the Guidelines should be the starting point and the initial benchmark" for sentencing. Bostic argues his sentence was both procedurally and substantively unreasonable.

*Id.*, 970 F.3d at 610 (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)).

15

Here, the majority acknowledges that "we first determine whether a sentence is procedurally unreasonable before considering its substantive reasonableness." *Id.* The majority then states that Hudgens only addresses substantive reasonableness and confines its analysis to only that sub-category. In doing so, the majority paraphrases the quote above into a slightly different standard, "[w]e review the substantive reasonableness of a criminal sentence for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 46 (2007); *United States v. Fraga*, 704 F.3d 432, 437 (5th Cir. 2013)." However, neither *Gall* nor *Fraga* stand for the proposition that the court should skip the procedural aspect of the test if the appellant's brief does not include a subheading that states "procedural reasonableness." Instead, both of these cases state that the court must first determine whether the sentence is procedurally sound before considering the substantive reasonableness. *See Gall*, 552 U.S. at 40, 51; *see also Fraga*, 704 F.3d at 437 ("Our inquiry involves two steps. First, we must 'ensure that the district court committed no significant procedural error.' Second, if the district court's sentencing decision is procedurally sound, we 'consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.'").

In *Bostic*, this court said:

> Procedural error includes "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence — including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51, 128 S.Ct. 586 (referring to 18 U.S.C. § 3553(a)). Bostic argues on appeal that the district court did not provide an adequate explanation to "support[ ] the court's 770 percent upward variance from the high end of the Guidelines range." Bostic's counsel objected to Bostic's above-Guidelines sentence as procedurally unreasonable:

No. 19-50628

> "Specifically, we object to the imposition of this sentence of the 3553(a)(2) factor as not considering in the nature and circumstances of the offense, the health and use of the decedent in this particular case." The district court responded merely, "Noted," and then ended the sentencing proceedings.

> Considerations of the "nature and circumstances of the offense" fall under Section 3553(a)(1), not 3553(a)(2). Bostic's counsel, though, had earlier argued against an above-Guidelines sentence under Section 3553(a)(1) and cited the nature and circumstances of the offense. Because of that argument, we conclude that Bostic's objection sufficiently alerted the district court to the nature of the alleged error such that it had an opportunity for correction. *United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009); Fed. R. Crim. P. 51(b). We thus review for abuse of discretion. *Gall*, 552 U.S. at 51, 128 S.Ct. 586.

*Bostic*, 970 F.3d at 610-11.

Here, we know that Hudgens' counsel objected and argued as to both procedural and substantive reasonableness. Thus, the district court was sufficiently alerted to the nature of the alleged error such that it had an opportunity for correction. Further, on appeal, Hudgens asserts that: "the district court's upward departure sentences did not constitute an appropriate application of either its sentencing discretion or the 18 U.S.C. § 3553 factors"; "the district court imposed an unreasonable upward departure"; the sentence was unreasonable with regard to § 3553(a) – both subsections (1) and (2); "The court's review is bifurcated; it looks first to whether the district court committed procedural error and, if not, to whether the sentence was reasonable. *United States v. Williams*, 517 F.3d 801, 808 (5th Cir. 2008)"; "*Burrage* precluded the prosecution from charging Appellant under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C)"; the district

17

No. 19-50628

court abused its discretion in its decision to depart upwardly and as to the extent of its departure; and the degree of departure and sentence as a whole are unreasonable.

When you compare what Hudgens argues with what Bostic argued and with what this court in *Bostic* said actually constitutes procedural error, it shows that Hudgens is arguing both procedural and substantive unreasonableness. Nevertheless, the majority does not address procedural reasonableness.

With regard to substantive reasonableness, the majority cites *United States v. Lewis*, 819 F. App'x 718, 721 (11th Cir. 2020), and 18 U.S.C. § 3553(a) for the proposition that "nothing prevents a sentencing court from considering the fact that death resulted from an offense." While an unpublished Eleventh Circuit case may be persuasive, *Lewis* is easily distinguished. *Lewis* involved three fatal overdoses and a defendant who continued to supply drugs "even as people were dropping dead from those drugs" in his house. *Id.* Here, A.F.'s cause of death was not determined to be an overdose.

The majority also cites *United States v. Montanez*, 797 F. App'x 145 (5th Cir. 2019), for the proposition that "our precedent permits district courts to rely on factors already incorporated by the Guidelines to support a non-Guidelines sentence." *Id.* at 149 (internal marks omitted) (quoting *United States v. Brantley*, 537 F.3d 347, 350 (5th Cir. 2008)). However, notwithstanding that *Montanez* is unpublished, it can easily be distinguished. In *Montanez*, this court said:

> The Presentence Investigation Report (PSR) assessed a Guidelines range of 120 to 150 months based on a total offense level of 27 and a criminal history category of V. However, the PSR also noted that an upward variance may be warranted because "numerous circumstances ... were not adequately

18

> taken into account in the guidelines calculations." According to the PSR, Montanez attempted to coerce the victim into helping him kidnap minor females, filmed and sent multiple videos of actual and simulated sexual assaults, and scouted middle schools. He also searched on-line for pornography involving the rape and abuse of unconscious and mentally handicapped females and photographed "a prepubescent minor female's crotch and buttocks," which he sent to the victim. The PSR indicated an upward variance may be warranted because other federal or state charges could have been pursued based on Montanez's possession of 18 images constituting child pornography.

*Montanez*, 797 F. App'x at 147.

Here, there are no other numerous incidents or circumstances not taken into consideration. This case revolves around this one incident and these parties. A.F.'s death was explicitly *not* attributed to an overdose, no others died and there were no other incidents or circumstances not taken into consideration. Further, *Brantley* is also easily distinguished because it was plain error review. *Id.* 537 F.3d at 349.

The majority also cites various authority establishing that courts, including this one, have upheld upward variances. It then cites *Bostic*, saying "this court recently suggested that it would uphold an almost identical sentence to the one Hudgens received." Specifically, the majority quotes the statement that the court was not taking "a position on whether this same sentence could be justified by a more fulsome explanation." However, there is *not* a more fulsome explanation here.[2]

Many of the factors discussed by the district court were the same for Bostic. The only factors that were different here were Hudgens injecting

---

[2] This also adds to the apparent confusion regarding procedural/substantive.

A.F. with meth, Hudgens making the video while smacking her in the face with a towel and calling her names, and Hudgens attempting to dispose of paraphernalia—for which he received a separate, two-level increase for obstruction under U.S.S.G. § 3C1.1.  However, the district court did not explain how or why these additional factors would support an upward variance to the same level as causing A.F.'s death.

While these additional factors potentially could have justified an upward variance of some degree, the district court explicitly said it was distinguishing *Burrage* because "[t]he unique circumstances of this offense are serious in nature."  The district court then sentenced Hudgens to exactly 240 months, which is what he would have received "[i]f the government had been able to charge Mr. Hudgens with distribution of methamphetamine which resulted in death."  In doing so, the district court did not properly distinguish *Burrage*.  Instead, as Hudgens' argues, the district court "made an improper end-around *Burrage*."

Additionally, the majority cites *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256-57 (11th Cir. 2015), for the proposition that one of the factors to be considered is whether "the upward variance falls within the statutory maximum."  The majority also cites various other cases that upheld an upward variance.  However, the majority also acknowledges the disagreement with a previous unpublished case from this court, *United States v. Mathes*, 759 F. App'x 205 (5th Cir. 2018).  In *Mathes*, this court concluded that the district court did not commit procedural error by imposing an upward variance but that the sentence based on his criminal history and the dismissal of a firearms charge was substantively unreasonable.  Similarly, here there is improper emphasis on A.F.'s death.

Moreover, as the PSR stated, the offense level for both counts "is determined largely based on the basis of the total amount of harm or loss, the

quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior." The PSR also stated, "Offense Behavior Not Part of Relevant Conduct: None." Additionally, as the majority acknowledges, the PSR stated that there was no identifiable victim of Hudgens' offenses. Thus, the government's position supports Hudgens' assertion that A.F. was a participant in—and not a victim of—Hudgens' offenses. Among other things, A.F. did not merely request to smoke more methamphetamine as the majority states, but actually did smoke more methamphetamine after the injection from Hudgens.

For these reasons, I would vacate and remand for resentencing. Thus, I respectfully dissent.