# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 3, 2025

Lyle W. Cayce
Clerk

No. 24-40049

United States of America,

*Plaintiff—Appellee*,

*versus*

Darell Montrell Trotter,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 5:22-CR-2-1

Before Smith, Dennis, and Richman, *Circuit Judges*.

James L. Dennis, *Circuit Judge*:

This appeal asks whether a prosecutor's comments during sentencing violated a plea agreement. Because we conclude that they did, we VACATE the district court's judgment and REMAND to allow the defendant to "make a final, counseled, and enforceable election" to either seek specific performance by the Government before a new judge or rescind the plea agreement. *See United States v. Williams*, 821 F.3d 656, 659 (5th Cir.), *reh'g denied*, 833 F.3d 449 (5th Cir. 2016).

No. 24-40049

I

Darell Montrell Trotter pleaded guilty to conspiracy to distribute fentanyl pursuant to a plea agreement. Although Trotter's indictment alleged that his conduct caused the death of an individual, DS, the plea agreement did not include this allegation. The agreement did, however, contain several stipulations, including that "[t]he defendant shall be sentenced to a term of imprisonment within the applicable sentencing range under the U.S. Sentencing Guidelines," but that "[t]he parties understand that the Court is not bound by these stipulations."

The probation officer's presentence investigation report calculated the Guidelines' range as 135–168 months' imprisonment and recommended a sentence of 135 months. Trotter filed various objections to the PSR, which the Government alleges were filed in violation of the plea agreement. Trotter ultimately withdrew his objections and concurred in the probation officer's recommended sentence. The Government filed a sentencing memorandum asking the court to impose a sentence at the top end of the Guidelines' range because "Trotter was a high-volume dealer of deadly pills . . . [and] should not be absolved of the tragedy of DS's death simply because he was two steps above the person who sold DS the lethal pills in the supply chain."

At sentencing, the Government presented the testimony of DS's father, who stated, "[n]othing will bring [my son] back. I just pray that . . . if you want an easy buck selling deadly drugs and someone dies, you will spend a lifetime in prison." The district court then sought clarification from counsel: "There's no motion for downward departure or upward departure of variance by the Government; is that correct?" Both the prosecutor and defense counsel confirmed that this was correct.

Nevertheless, the prosecutor argued that the Guidelines underrepresented the extent of Trotter's involvement and the harm his

2

conduct caused, urging the court to consider an upward variance under 18 U.S.C. § 3553(a). The prosecutor conducted a "thought experiment"—a hypothetical dinner conversation between laypersons—to illustrate that legal causation requirements prevented application of the twenty-year statutory minimum for an offense resulting in death, despite the potency of the drug, the scope of Trotter's conduct, and the victims affected. He described DS's father's comments as a "helpful wake-up call" and cautioned against "legal tunnel vision" or "guideline myopia," emphasizing a "pretty significant disconnect between the way a layperson understands responsibility and the way the guidelines end up coming out."

The prosecutor stressed that, while the court should use the Guidelines, the § 3553(a) factors permitted the court to "take a step back" and "assess[] the totality of the Defendant's conduct." He reminded the court of the statutory sentencing range—"a mandatory minimum of 10 years and a statutory maximum of life"—and noted that, although the Guidelines recommended 135–168 months, "the Court has full discretion." He invited the court to "take a step back" and consider whether the Guidelines' range aligned with how "our fellow citizens" would resolve such cases.

At the conclusion of the hearing, the district court sentenced Trotter to 168 months' imprisonment—the top of the Guidelines' range—and five years of supervised release. The court did not reference the prosecutor's earlier remarks in pronouncing sentence. This timely appeal followed. Trotter asserts for the first time that the Government breached the plea agreement by undermining the proposed Guidelines' range and advocating for a sentence above it.

## II

A defendant who fails to object to the Government's breach of the plea agreement before the district court is entitled to plain error review. *United*

*States v. Kirkland*, 851 F.3d 499, 502–03 (5th Cir. 2017); *see also* Fed. R. Crim. P. 52(b). Under the plain-error standard, the defendant bears the burden to show (1) an error; (2) that is clear or obvious, rather than subject to reasonable dispute; and (3) that the error affected his substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009) (citations omitted). We then have discretion to correct the error, which we exercise if the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *See id.*

## III

Although the Government does not fully concede the first two prongs of plain error, it acknowledges that "the crux of this appeal concerns the third and fourth factors." We agree and conclude that the first two prongs are satisfied.

When assessing whether a party breached a plea agreement, courts "apply general principles of contract law, construing the terms strictly against the government as drafter, to determine whether the government's conduct is consistent with the defendant's reasonable understanding of the agreement." *United States v. Hebron*, 684 F.3d 554, 558 (5th Cir. 2012). A defendant bears the burden of proving a breach of the plea agreement by a preponderance of the evidence. *United States v. Scott*, 857 F.3d 241, 244 (5th Cir. 2017).

Paragraph 5(g) of Trotter's plea agreement provides, in relevant part, that "[t]he defendant shall be sentenced to a term of imprisonment within the applicable sentencing range" under the Guidelines. Trotter asserts that a reasonable interpretation of this stipulation is that (1) a Guidelines' sentence is appropriate and (2) "neither party would advocate for a sentence outside that range." The Government does not contest this interpretation.

The Government breached the plea agreement. Although it assured the court at sentencing that it was not making a motion for an upward departure or variance, the Government now concedes that some of the prosecutor's sentencing hearing remarks, "standing alone," could be construed as urging a sentence above the Guidelines. True, the plea agreement acknowledges that the district court was not bound by the Guidelines, but the prosecutor went beyond merely reminding the court of its discretion; he affirmatively advocated for a sentence beyond the Guidelines' range.

Specifically, the prosecutor presented a witness accusing Trotter of murder, despite earlier acknowledging a lack of legal causation; argued that the Guidelines "significantly under[] represent[ed]" the severity of the offense; and urged the court to "take a step back" from the Guidelines while noting that the statutory maximum was life. The Government advanced similar arguments in other cases to support upward variances. *See, e.g.*, *United States v. Hudgens*, 4 F.4th 352, 356–61 (5th Cir. 2021) (affirming an upward variance and 240-month sentence for a dealer whose indirect role contributed to a user's death). In sum, because the Government breached Trotter's plea agreement by arguing that a Guidelines' sentence was inappropriate, "[t]he first two plain-error factors are clearly met." *Williams*, 821 F.3d at 658.

Under the third plain-error prong, Trotter must show the error affected his substantial rights. In the sentencing context, "[a]n error affects an appellant's substantial rights when there is a reasonable probability that, but for the error, he would have received a lesser sentence." *Id.* at 657–58. Specifically, "[t]he Government's breach of its promise . . . affects a defendant's substantial rights *unless* the record indicates that . . . the district court would have imposed the same sentence regardless of the Government's breach." *Kirkland*, 851 F.3d at 503 (emphasis added). A defendant's

substantial rights are affected when "[t]here is *no* indication the district court would have been unmoved by the Government's recommendation." *Williams*, 821 F.3d at 658 (emphasis added). This standard reflects both the "reasonable probability" showing required of the defendant and "the common sense understanding of the important role the Government's recommendation plays in sentencing." *Kirkland*, 851 F.3d at 503.

In unpublished decisions, we have found no prejudice where the record affirmatively demonstrated that the same sentence would have been imposed even absent the breach. *See United States v. Villareal-Parades*, 647 F. App'x 504, 505 (5th Cir. 2016) ("The district court indicated its intent to apply the enhancement regardless of the terms of the plea agreement[.]"); *United States v. Soza*, No. 99-21194, 2001 WL 360661, at *2 (5th Cir. Apr. 3, 2001) (district court made clear "that she would have imposed the same sentence regardless of the Government's" breach). The district court here made no such affirmative statement.

What's more, the Government's assertion that "[n]othing in the record supports the notion that the [prosecutor's] additional comments at sentencing affected the court's decision in any way" overstates the record. While the prosecutor prefaced his remarks by stating that he was not requesting an upward variance, it strains credulity to conclude that the court was wholly uninfluenced—particularly where the Government criticized the very Guidelines range it had agreed to in the plea agreement, and where all other parties, including probation, recommended a bottom-of-range sentence. Trotter, moreover, was a strong candidate for a lower-range sentence: he had no criminal history points—the lowest possible score under the Guidelines. Yet the court imposed a sentence at the top of the range. Taken together, Trotter has shown that the prosecutor's remarks "may have . . . influenced" the court's decision to impose an upper-level Guidelines

sentence. *See Kirkland*, 851 F.3d at 504–05. Trotter's substantial rights were therefore affected.

Finally, we exercise our discretion to correct the error. We consider whether "the forfeited error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 505. "This prong is not automatically satisfied once the other three prongs are met," but there is a "rebuttable presumption that the Government's meaningful breach of a plea agreement satisfies the fourth prong of the plain-error test." *Id.* A plea agreement "breach 'constitutes a particularly egregious error' and there is an 'inherent unfairness involved in the Government's inducement of the defendant's waiver of important constitutional rights by making promises that it ultimately does not keep." *United States v. Malmquist*, 92 F.4th 555, 565 (5th Cir. 2024) (quoting *Kirkland*, 851 F.3d at 505–06). However, "[t]here may well be countervailing factors in particular cases" rebutting the presumption. *See Puckett*, 556 U.S. at 143.

The Government asserts two countervailing factors. *First*, its claim that Trotter received an "extremely generous" plea agreement is unpersuasive. Benefits such as dismissal of certain charges and a reduced offense level were part of the initial bargain. The Government knew of Trotter's conduct when entering the agreement and cannot later claim it should be excused from its obligations. *See Kirkland*, 851 F.3d at 506; *Malmquist*, 92 F.4th at 566.

*Second*, the Government suggests it could have withdrawn from the plea agreement due to Trotter's alleged breaches. But any alleged breaches were cured after Trotter withdrew the allegedly problematic PSR objections with the court and Government's agreement. *See United States v. Purser*, 747 F.3d 284, 293–94 (5th Cir. 2014) (noting that the prosecution "cured its breach by withdrawing its objection . . . and the district court subsequently

acted consistently with the plea agreement" and that curing a plea agreement breach "vindicates the policy interest in establishing the trust between defendants and prosecutors that is necessary to sustain plea bargaining"). The Government cannot invoke alleged breaches retroactively; it should have acted *ex ante*. Accordingly, the fourth plain-error prong is satisfied, and we correct the error.

On remand, Trotter may either (1) seek specific performance of the plea agreement in a sentencing hearing before a new judge or (2) withdraw from the plea agreement. *Kirkland*, 851 F.3d at 507.

IV

For the foregoing reasons, we VACATE the district court's judgment and REMAND for further proceedings not inconsistent with this opinion.

No. 24-40049

Jerry E. Smith, *Circuit Judge*, dissenting:

There is something wrong with this picture.

Trotter entered into a plea agreement stipulating to a sentence within the guideline range; that's what he got. But on appeal, still represented by counsel, Trotter invented a new theory that the prosecutor had "breached" the plea agreement by emphasizing the seriousness of the crime, despite the government's sentencing memorandum asking for a sentence at the top of the guideline range (which the court then imposed).

There is a straightforward way to decide this case: The government did not breach, and the defendant does not show that his substantial rights were affected. That should be the end of this matter on plain-error review. I differ with the majority's well-intentioned disposition to the contrary.

For one, the government made clear that it was not seeking an upward departure or variance before the prosecutor's comments in question. Indeed, the district judge did not make any reference to the prosecutor's remarks before imposing the sentence. There is no indication that the judge was influenced by that.

Second, the defendant has not demonstrated that his substantial rights were affected under the third prong. He received a sentence at the top of the guideline range, which is specifically what the parties had agreed to and what the government's sentencing recommendation said.

This is much ado about nothing. In a case where there was no breach or effect on the defendant's substantial rights, it is highly meddlesome for the defendant to have the opportunity for resentencing and—to boot—before a different district judge. In this regard, the majority mishandles the fourth prong of plain-error review: whether the pretended error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." The

9

No. 24-40049

opposite is true:  Not only does enforcing this plea agreement uphold the integrity of the rule of law, but the result that the majority dictates undermines the reputation of the judiciary by saying that a defendant can back out of a plea deal even after the district court has imposed a sentence within the limits to which both sides had explicitly agreed.

The majority's approach to plain-error review absolves the defendant of bearing the ultimate burden of proving plain error.  I respectfully dissent.